**Edward MOLNAR, Relator,**

v.

**COUNTY OF CARVER BOARD OF COMMISSIONERS, Respondent.**

No. C1–97–260.

Court of Appeals of Minnesota.

Aug. 19, 1997.

Dennis Patrick Moriarty, Jaspers, Moriarty and Walburg, P.A., Shakopee, for relator.

Michael A. Fahey, Carver County Attorney, Kari L.S. Myrold, Chief Deputy County Attorney, Chaska, for respondent.

Considered and decided by SHORT, P.J., and SCHUMACHER and HOLTAN, *JJ.

## OPINION

SCHUMACHER, Judge.

By writ of certiorari, a land owner appeals a county board's denial of a conditional use permit. We find that the writ was timely obtained, that certiorari was the appropriate method of appeal, and that substantial evidence supported the board's decision. We affirm.

## FACTS

Relator Edward Molnar owns 22.21 acres in Carver County that recently was rezoned from an agricultural district to a residential cluster district. The Carver County Planning Commission issued an order for a conditional use permit (CUP 9856) allowing for an additional residential home on the property. CUP 9856 divides the residential cluster district parcel into a 4.77–acre residential lot and a 17.44–acre agricultural lot. Molnar's existing home is included in the agricultural area, allowing him to construct another residence on the residential lot. CUP 9856 provides that the square footage of any additional buildings in the agricultural area is limited to 3000 square feet. It does not allow any additional conditional use permits for the agricultural area except one permitting existing structures to be used for storage.

Molnar declined to sign CUP 9856, leaving it ineffective, because he wishes to build a 20,000 square foot horse arena for training and raising horses on the 17.44–acre agricultural area of his land. He sought an amendment to the CUP allowing such construction.

After public hearings on Molnar's request, the Carver County Planning Commission recommended denying any amendment to CUP

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

9856. Respondent County of Carver Board of Commissioners denied the requested amendment by order on December 31, 1996. Molnar appeals.

## ISSUES

1. Is Molnar's appeal barred because it was untimely filed?

2. Does this court lack jurisdiction because Molnar failed to exhaust all remedies?

3. Was the County Board's decision to deny Molnar's request for an amendment to a conditional use permit arbitrary, unreasonable, under erroneous theory of law, or without evidence to support it?

## ANALYSIS

■ 1. Notice of the County Board's decision was mailed to Molnar on January 3, 1997. Molnar obtained a writ of certiorari for review by this court on February 7, 1997, 35 days after notice had been sent. The County Board asserts that Molnar's appeal must be dismissed because the Rules of Civil Appellate Procedure require "issuance of a writ of certiorari within 30 days after the date of mailing notice of the decision to the party applying for the writ." Minn. R. Civ. App. P. 115.01.

But the 30–day requirement in the appellate rules does not apply if "an applicable statute prescribes a different period of time." *Id.* Molnar's appeal from the County Board's decision is governed by Minn.Stat. § 606.01 (1996). *See In re Ultraflex Enters.*, 494 N.W.2d 89, 91 (Minn.App.1992) (quasi-judicial decisions of local governmental actors are reviewable by certiorari pursuant to Minn.Stat. § 606.01). Section 606.01 requires that the writ "be issued within 60 days after the party applying for such writ shall have received due notice of the proceeding sought to be reviewed thereby." Minn.Stat. § 606.01. Because Molnar obtained the writ within the 60–day period, his appeal is not time barred. The County Board's motion to dismiss is denied.

pointment pursuant to Minn. Const. art. VI, § 10.

■ 2. The County Board maintains that the county board of adjustment has authority to review the board of commissioners' CUP decisions. Because Molnar could have appealed his case to the board of adjustment, the county reasons, he has not exhausted all remedies and this court lacks jurisdiction. *See White Bear Rod & Gun Club v. City of Hugo,* 388 N.W.2d 739, 741 (Minn.1986) ("Certiorari is appropriate to review quasi-judicial proceedings only where there is no appeal and no other adequate remedy.")

The jurisdictional question highlights a difference between Minn.Stat. Ch. 394 (1996) (governing *county* authority for planning, development, and zoning) and Minn.Stat. Ch. 462 (1996) (governing *city* and *town* authority for planning, development, and zoning). Chapter 462 specifically provides that a person aggrieved by a city council's or town board's CUP decision may seek review "in the district court." Minn.Stat. § 462.361. The legislature did not provide a similar procedure for appeal from a county board's CUP decision. As a result, we have held that review of a county board's decision on a CUP is obtainable only through writ of certiorari to this court. *Neitzel v. County of Redwood,* 521 N.W.2d 73, 76 (Minn.App. 1994), *review denied* (Minn. Oct. 27, 1994); *Shetka v. Aitkin County,* 541 N.W.2d 349, 354 (Minn.App.1995), *review denied* (Minn. Feb. 27, 1996).

Chapter 394 vests the county board of adjustment with the authority to "hear and decide appeals from and review any order, requirement, decision, or determination made by any administrative official charged with enforcing any ordinance adopted pursuant to the provisions of sections [on planning and zoning]." Minn.Stat. § 394.27, subd. 5. The county board contends that this language gives the board of adjustment authority over the county board's CUP decisions. The county board cites *Toby's of Alexandria, Inc. v. County of Douglas,* 545 N.W.2d 54 (Minn. App.1996), *review denied* (Minn. May 21, 1996), in support of its interpretation.

We do not believe section 394.27, subdivision 5, grants a county board of adjustment authority to review a county board's CUP decisions. First, the authority vested in the board of adjustment is for the review of decisions and actions taken by an "administrative official." Minn.Stat. § 394.27, subd. 5. In this context, the county board of commissioners is not an "administrative official." Second, the board of adjustment is given authority to review the acts of an administrative official who is "enforcing any ordinance * * *." *Id.* A conditional use permit is adopted pursuant to local ordinances, but it is not itself an ordinance. Thus, we find that the board of adjustment lacks authority to review county board CUP decisions, and we reiterate our holding in *Neitzel* that, because Chapter 394 provides no method of review for county board CUP decisions, such decisions are rightly appealed through writ of certiorari to the Court of Appeals. *See Neitzel,* 521 N.W.2d at 76.

In *Toby's* we noted in dicta that the issuance of a CUP "appears to be an appealable 'decision' within the jurisdiction of the board of adjustment." *Toby's,* 545 N.W.2d at 56. But that language was not intended as a judicial construction of Chapter 394 requiring appeals of county board CUP decisions to be brought to the county board of adjustment. Rather, the issue in *Toby's* was whether a party aggrieved by the county board's CUP decision could appeal to the district court. We held that the general authority given to counties over zoning matters included the authority to authorize a direct appeal of a county board's CUP decision to the district court. *Id.* In *Toby's* the county had enacted an ordinance specifically providing that CUP decisions would be appealed to the district court. Carver County has not enacted such an ordinance.

■ We are mindful that the supreme court has expressed reluctance to review zoning decisions by writ of certiorari unless such review entails a discrete legal question. *White Bear,* 388 N.W.2d at 742 (construing *Honn v. City of Coon Rapids,* 313 N.W.2d 409, 416 (Minn.1981)). But where the legislative body has failed to authorize a direct appeal of the county board's decision, no lower tribunal has acquired subject matter jurisdiction over the appeal, and the sole method available for review is by writ of certiorari. *Neitzel,* 521 N.W.2d at 76. We

assume the disparity between Chapter 394 and Chapter 462 is intended until the legislature indicates otherwise. Accordingly, because Molnar obtained a writ of certiorari, jurisdiction over his appeal properly lies with this court.

3. In reviewing the quasi-judicial decision of a government body not subject to the Administrative Procedure Act, we consider whether the decision was "arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it." *Dietz v. Dodge County*, 487 N.W.2d 237, 239 (Minn.1992) (citation omitted). The court must assess the legal sufficiency and factual basis of the reasons given for the decision. *Scott County Lumber v. City of Shakopee*, 417 N.W.2d 721, 727 (Minn.App.1988), *review denied* (Minn. Mar. 23, 1988).

■ Molnar asserts that his proposal to build a horse arena falls within the "permitted uses" of his property. The Carver County zoning ordinance provides for "commercial agriculture" as a permitted use of the agricultural area within a residential cluster district. Carver County, Minn., Zoning Ordinance 32S § 8.0301(B) (July 23, 1996). It is undisputed that Molnar's proposal falls within the definition of commercial agriculture. *See id.* § 3.0318 ("commercial agriculture" includes "riding academies, stables and similar uses"). However, "commercial agriculture" is limited by the ordinance to parcels of land "of 20 acres or more." *Id.* §§ 3.01, 11.028. Because the agricultural area of Molnar's parcel is only 17.44 acres, it does not qualify for commercial agriculture as defined by the ordinance. Commercial agriculture, therefore, is not a permitted use of Molnar's property.

A "conditional use" under the ordinance is "land use * * * that would not be appropriate generally but may be allowed with appropriate restrictions as provided by official controls upon a finding that (1) certain conditions as detailed in the zoning ordinance exist, and (2) the use or development conforms to the comprehensive land use plan of the County, and (3) is compatible with the existing neighborhood." *Id.* § 11.034.

■ The County Board found that Molnar's proposal was inconsistent with the county's comprehensive land use plan and incompatible with the existing neighborhood. We believe those findings are adequately supported by evidence in the record.

The stated purposes of the residential cluster district include to "[p]reserve [l]ong [t]erm [a]gricultural land, * * * [and][p]reserve natural amenities * * *." *Id.* § 8.0. The evidence suggests that Molnar's proposal is inimical to these goals: The proposed facility is very large given the limited acreage; his parcel has been divided to allow for construction of another residence; and his stated intent is eventually to use the facility to board and train horses owned by others, raising questions of access and increased commercial activity. The County Board found that "commercial/recreational use * * * would destroy the rural character of the neighborhood."

■ While Molnar contends that the County Board may not rely on "sheer speculation" in making its findings, we note that the record contains statements by Molnar indicating his intention to establish a commercial training facility in the ·future. We believe it is within the discretion of a planning commission to consider potential future uses of property in deciding whether to grant a CUP, and we find no fault with the County Board's reliance on such future-use evidence.

Further, the evidence suggests that the proposed arena would be adjacent to several residential lots. Given the size of the arena and the potential for increased commercial activity in the area, the County Board was justified in finding that the facility "could become a nuisance adversely affecting the enjoyment of other properties in the immediate vicinity."

■ Local authority over land use is entitled to great deference, and we will not upset a county's decision unless it has no rational basis. *SuperAmerica Group, Inc., v. City of Little Canada*, 539 N.W.2d 264, 266 (Minn. App.1995), *review denied* (Minn. Jan. 5, 1996). The County Board has provided a rational basis for denying the CUP amendment by noting that such a large arena next

to residential lots would be a potential nuisance and that the arena would destroy the rural character of the neighborhood rather than further the comprehensive plan.

## DECISION

This appeal was timely and writ of certiorari was the appropriate method to obtain review. Because substantial evidence supports the County Board's findings, we affirm. Affirmed and motion denied.