GUN LAKE ASSOCIATION,
et al., Relators,

v.

COUNTY OF AITKIN, individually and
by and through its planning commis-
sion and board of commissioners, Re-
spondent,

George Shetka, et al., Respondents.

No. C7–99–1630.

Court of Appeals of Minnesota.

June 20, 2000.

Thomas A. Streitz, Minneapolis, MN, John Erickson, Erickson & Pearson Law Offices, Brainerd, for relators.

Jack Y. Perry, Tamika R. Nordstrom, Briggs & Morgan, P.A., Minneapolis, for respondent George Shetka and Charles Hawkinson.

Michael J. Ford, Quinlivan & Hughes, P.A., St. Cloud, and Bradley Rhodes, Aitkin County Attorney, James P. Ratz, Assistant County Attorney, Aitkin, for respondent Aitkin County.

Considered and decided by G. BARRY ANDERSON, Presiding Judge, SCHUMACHER, Judge, and PETERSON, Judge.

## OPINION

PETERSON, Judge

Respondents applied to Aitkin County for a conditional use permit (CUP) to operate a hot-mix, asphalt plant on property in Fleming Township. When the county planning commission initially considered the CUP application, it stated it was conditionally granting the application and that specific conditions for the operation of the hot-mix plant would be imposed later. The planning commission later approved certain conditions and relators appealed the planning commission's decision to the Aitkin County Board of Commissioners, which denied the appeal. On appeal to this court from the county board's denial of the appeal from the planning commission, relators challenge the grant of the CUP and the process used to create the later-imposed conditions. Because the county board's decision to deny the portion of the appeal challenging the grant of the CUP is consistent with Minn.Stat. § 15.99, subd. 2 (1998), and because relators have not shown that the process used to create the conditions was defective, we affirm.

## FACTS

Respondent George Shetka owns property in Fleming Township in Aitkin County. Respondent Charles Hawkinson manages that property. In May 1998, Hawkinson applied to Aitkin County for a CUP allowing part of the Shetka property to be used as a "permanent/ongoing site for the use of temporary/portable hot mix plants."

The Gun Lake Resident's Association and Robert Carlson, among others, opposed the application. The Fleming Township Board of Supervisors sent the county planning commission a letter expressing the board's opposition to allowing a hot-mix facility on Shetka's land. In July 1998, the township board sent the planning commission another letter stating that the township wanted to present its case for adopting a list of conditions for any CUP the county might grant.

At some point in July 1998, the township board, residents' associations, Hawkinson, Shetka, and a representative of an environmental group met. They discussed, and at least tentatively agreed upon, conditions for the operation of the proposed hot-mix plant. On July 20, 1998, the county planning commission met to address the CUP application. At that meeting: (a) the proposed conditions were presented to the planning commission; (b) a township representative stated that the township board believed the proposed conditions were "solid," would protect the surrounding environment, and that the township board was in favor of granting the CUP with those conditions; (c) the planning commission noted that two other sets of proposed conditions had been introduced; (d) Shetka's attorney argued that if the legal requirements for a CUP were satisfied, the commission lacked discretion to deny the application; (e) questions were raised about whether there were other possible sites for a hot-mix plant in the county; and (f) the planning commission stated that it was conditionally approving the CUP application but that the question of conditions for the CUP would be referred to an ad hoc environmental responsibility team made up of two members of the planning commission, the county attorney, and staff from the zoning office.

On July 20, 1998, the county zoning ordinance required that an appeal of a planning commission decision be taken to the county board within 30 days. No appeal of the planning commission's July 20 decision was taken. On July 29, 1998, the environmental responsibility team met to create a list of proposed conditions for the CUP. A representative from the township and counsel for Carlson were allowed to be "non-verbal observers" at the meeting.

An August 14, 1998, letter from the Minnesota Environmental Quality Board to the planning commission stated that an Environmental Assessment Worksheet

(EAW) had been requested for the proposed hot-mix plant and that the county was the proper authority to ask the CUP applicant to complete the worksheet. Effective August 25, 1998, the county zoning ordinance was amended to require that an appeal of a planning commission decision be by writ of certiorari to the Minnesota Court of Appeals. An EAW was filed in February 1999. Comments on the EAW were filed through early March. Comments from the Minnesota Pollution Control Agency stated that while the odor associated with the hot-mix plant would not be easy to address, the other aspects of the EAW were not a major concern.

A March 22, 1999, memorandum from the county planning commission to the county board stated that the environmental responsibility team did not recommend continuing the environmental review process by requiring an Environmental Impact Statement (EIS) for the proposed facility. The next day, the county issued its decision against requiring a full EIS, stating that the identified environmental impacts were minor and/or temporary, the plan did not include environmental effects that could not be addressed, and the project lacks a potential for significant environmental effects.

On April 19, 1999, the full planning commission met to consider the list of proposed CUP conditions that had been developed by the environmental responsibility team. Relators' counsel argued that the process for developing the conditions had been flawed because his attempt to put information in the record (apparently at the July 29 meeting that started the process for drafting the conditions) had been ignored. The chair of the commission replied that the only thing at issue at the meeting was the propriety of the conditions for the CUP. After some alterations, the commission approved the proposed conditions. Counsel for Carlson asked how to appeal the planning commission's decision and the county attorney told him to appeal to the county board.

On May 15, Carlson's counsel sent the county board a letter stating that Carlson was appealing the "April 19, 1999 granting of a [CUP.]"[1] On August 10, the county board heard the appeal. On August 31, the board voted 3–2 to deny the appeal. This appeal followed. During the pendency of the appeal, Fleming Township was dismissed as a party to the appeal.

## ISSUES

1. Did the county board act arbitrarily, or otherwise improperly, in denying the portion of relators' appeal challenging the grant of the CUP application?

2. Did relators show defects in the process used to create the conditions imposed on the conditional use permit?

## ANALYSIS

### I.

■ "[A]n agency must approve or deny within 60 days a written request relating to zoning" and "[f]ailure of an agency to deny a request within 60 days is approval of the request." Minn.Stat. § 15.99, subd. 2 (1998). "Agency" includes a county. Minn.Stat. § 15.99, subd. 1 (1998). Relators allege that the CUP application was made on May 20, 1998. Shetka alleges that the application was made on May 18, 1998. Although some of the documents supporting the CUP application are dated May 18, the application is dated May 20. For purposes of this appeal, we assume

1. Shetka and relators dispute whether the failure to state in the appeal letter that the Gun Lake Association was challenging the planning commission's decision means Gun Lake is not a proper party to the appeal to this court. Whether Gun Lake is a proper party in this court will not affect the scope of the arguments presented for decision because it is undisputed that (a) Carlson did appeal to the county board; (b) Carlson and Gun Lake have the same attorney; and (c) that attorney filed a single brief in this court. Thus, this opinion refers to Carlson and Gun Lake as "relators."

that the application was made on May 20, 1998.

Sixty days from May 20, 1998, was Sunday, July 19, 1998. Therefore, the last day for the county to approve or deny the application was Monday, July 20, 1998. *See* Minn.Stat. § 645.15 (1998) (stating, if last day of relevant period is Saturday, Sunday or legal holiday, period continues to next day that is not Saturday, Sunday or legal holiday). On July 20, 1998, the county planning commission stated that it was "conditionally approving" the CUP application and that the conditions for the approval would be addressed later.

It is not clear from the record whether the planning commission intended to actually grant the CUP application on July 20, 1998. The record of the July 20, 1998, hearing includes statements by the chairman of the planning commission indicating that the commission was "[c]onditionally approving; we are not approving [the application]. It will not be approved or disapproved until the next meeting, based on what the conditions are with the committee—[.]" Similarly, the minutes of the April 19, 1999, planning commission meeting indicate that the chair of the planning commission "stated that if [the conditions proposed by the environmental responsibility team] make this permit acceptable and there are successful findings of fact, the commission will approve the [CUP.]"

▆▆▆ Although it is not clear whether the planning commission intended to grant the CUP application on July 20, 1998, it is clear that the commission did not deny the application. Therefore, either the application was approved by an affirmative act of the planning commission on July 20, or the application was approved as a matter of law under Minn.Stat. § 15.99, subd. 2, because the planning commission failed to deny the application within 60 days. *See Demolition Landfill Servs., LLC v. City of Duluth,* 609 N.W.2d 278, 281 (Minn.App. 2000) (holding that, under Minn.Stat. § 15.99, subd. 2, an agency's rejection of a resolution to grant a permit application was not equivalent to denying the application and therefore, the permit was granted as a matter of law), *pet. for rev. filed* (Minn. May 26, 2000).[2]

▆▆▆ As of July 1998, section 11.05 of the Aitkin County zoning ordinance stated that "*any* decision of the Planning Commission" regarding a CUP application could be appealed to the county board within 30 days. Aitkin County, Minn., Zoning Ordinance § 11.05 (1996) (emphasis added).[3] For purposes of this appeal, we assume that the ordinance's use of "any decision" refers to "any *final* decision" and that therefore, the planning commission's July

**2.** Relators argue that whether the CUP application was approved as a matter of law is not properly before this court because respondents did not file a notice of review raising that issue. But appellate courts have the obligation to decide cases consistent with the law. *See State v. Hannuksela,* 452 N.W.2d 668, 673 n. 7 (Minn.1990) ("it is the responsibility of appellate courts to decide cases in accordance with law and that responsibility is not to be 'diluted by counsel's oversights, lack of research, failure to specify issues or to cite relevant authorities'") (citation omitted); *Greenbush State Bank v. Stephens,* 463 N.W.2d 303, 306 n. 1 (Minn.App.1990) (applying *Hannuksela* in a civil case), *review denied* (Minn. Feb. 4.1991). Our decision simply recognizes that under Minn.Stat. § 15.99, subd. 2, the planning commission's failure to deny the CUP application within 60 days after it was submitted is an approval of the application. The approval occurred without any further action by respondents to invoke their rights under the statute, and the respondents did not lose their rights under the statute by failing to file a notice of review.

**3.** After oral argument to this court, the county was directed by order of this court to file copies of the county's zoning ordinance in effect on May 18, 1998, and all later amendments. In addition to the requested documents, this court received numerous other post-oral-argument submissions from the parties. The unsolicited submissions were improper and were not considered in the resolution of this appeal. *See* Minn. R. Civ.App. P. 128.02, subd. 4 (stating that no brief beyond those identified in the rules may be filed without leave of the court).

20, 1998, statement that it would rule on the conditions for the CUP application at a later date rendered the July 20 grant of the CUP (be it a grant by the planning commission, a conditional grant by the planning commission, or a grant by operation of law under Minn. Stat. § 15.99, subd. 2) non-final and hence not appealable to the county board until the planning commission made its decision on conditions for the CUP.[4]

On appeal of a county's denial of a CUP application, we review whether the decision was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law or without evidentiary support. *Molnar v. County of Carver Bd. of Comm'rs,* 568 N.W.2d 177, 181 (Minn.App. 1997). Relators allege that the grant of the CUP application is defective because the county failed to abide by relevant statutes and ordinances, failed to make adequate findings of fact, and made findings that were not supported by the record. But the result reached by the county board, which, in effect, affirmed the grant of the CUP, is not only allowed, but compelled, by statute due to the county's failure to deny the CUP application within the period set out by Minn.Stat. § 15.99, subd. 2. We cannot hold that the county acted in an arbitrary, or otherwise improper, fashion when the result it reached was compelled by statute.

## II.

Effective on August 25, 1998, section 11.05 of the Aitkin County zoning ordinance was amended to require that appeals from planning commission decisions relative to a conditional use permit be taken to the Minnesota Court of Appeals by writ of certiorari. Respondents argue that relators improperly appealed the April 19, 1999, planning commission decision to the county board under the old appeal procedure rather than to this court under the amended procedure.

Relators appealed the planning commission's decision pursuant to advice from the Aitkin County Attorney that the old appeal process continued to apply to applications initiated before the effective date of the ordinance amendment. It is not apparent from the record what authority the county attorney relied on to conclude that the old appeal process applied. We have found nothing that indicates one way or the other whether the ordinance amendment was to be applied to applications that were pending when the amendment became effective. Therefore, because the record does not permit meaningful analysis of this question, and because we conclude that a decision on this issue will not change the effect that our ultimate decision will have on the parties, we decline to determine which appeal process applies. We assume that an appeal to the county board under the old appeal process was proper.

Relators allege that the planning commission's process for developing the conditions for the CUP deprived them of due process of law and violated the open

4. Our construction of the ordinance is consistent with the amended version of the ordinance that became effective in August 1998 and allows appeal of *"any* decision of the Planning Commission relative to a conditional use permit"* to this court by writ of certiorari. (emphasis added). *See In re Application by City of Rochester for Adjustment of Serv. Area Boundaries With Peoples Coop. Power Ass'n. Inc.,* 524 N.W.2d 540, 541 (Minn.App. 1994) (stating certiorari ordinarily available only when ruling sought to be reviewed is final, rather than interlocutory, determination). If the ordinance in effect in July 1998 did not require a final decision for appeal to the county board, the planning commission's failure to immediately rule on the conditions for the CUP did not render the July 20, 1998, grant of the CUP (be it a grant by the planning commission, a conditional grant by the planning commission, or a grant by operation of law under Minn.Stat. § 15.99, subd. 2) unappealable. Under this analysis, relators' May 1999 attempt to appeal the July 1998 grant was untimely, the grant of the CUP application was not properly before the county board and is not properly before this court.

meeting law.[5] To support their argument, relators cite the 14th Amendment to the United States Constitution, Article I, Section 7, of the Minnesota Constitution, and the Minnesota Open Meeting Law, Minn. Stat. § 471.705 (1998). But relators do not explain how the constitutional and statutory provisions they cite were violated; they simply argue in a conclusory fashion that the provisions were violated. Absent an attempt to apply the law that they cite, relators failed to carry their appellate burden to show error and prejudice. *Midway Ctr. Assocs. v. Midway Ctr., Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975).

■ Furthermore, quasi-judicial proceedings, such as considering a CUP application, do not generally invoke "the full panoply of procedures required in regular judicial proceedings[;]" the applicable rights of due process are "reasonable notice of hearing and a reasonable opportunity to be heard." *Barton Contracting Co., Inc. v. City of Afton*, 268 N.W.2d 712, 716 (Minn.1978).

Relators allege that they were precluded from meaningful participation in the environmental review team's construction of the list of conditions for the CUP. But although relators were not able to actively participate in drafting some of the conditions proposed for the CUP, they had substantial input in at least one of the preliminary lists of proposed conditions considered by the environmental review team. Relators also participated in both the April 19, 1999, hearing at which the planning commission considered the conditions proposed by the environmental review team and in the appeal of that decision to the county board. Thus, while relators may not have been allowed to participate in an early stage of the drafting of proposed CUP conditions, they were allowed to address the reasonableness of the conditions at least twice.

Relators also object to the planning commission's "apparent rejection" of the "settlement agreement" approved by the parties in July 1998. Relators, however, cite no authority that requires a governmental body responsible for zoning decisions to accept the terms of an agreement among third parties. Absent any authority indicating that relators' opportunities to be heard were inadequate, we cannot say that relators have shown that they were denied the limited due process to which they were entitled in the quasi-judicial proceeding.

## DECISION

Because the county planning commission stated that it was conditionally granting the CUP application and did not deny that application within 60 days after it was submitted, the CUP application was either granted by affirmative act of the planning commission or by operation of law under Minn.Stat. § 15.99, subd. 2 (1998), on July 20, 1998. Because the county board's affirmance of the grant of the CUP was consistent with the result mandated by Minn.Stat. § 15.99, subd. 2, the county board did not act in an arbitrary or otherwise improper fashion in affirming that grant. Also, relators have not shown that their opportunity to be heard in the process used to create conditions imposed on the CUP was inadequate. Relator's request for attorney fees is denied.

**Affirmed.**

---

5. The parties' arguments on this issue assume that conditions can be imposed on a CUP after the date on which the CUP would otherwise have been granted under Minn.Stat. § 15.99, subd. 2. We express no opinion on this question.