Donna MORENO, et al., Appellants,
Respondents,

v.

CITY OF MINNEAPOLIS, Respondent,

v.

Minneapolis Institute of Arts, third-
party intervenor, Respondent,
Appellant.

Nos. A03–837, A03–943.

Court of Appeals of Minnesota.

March 9, 2004.

Daniel L.M. Kennedy, Minneapolis, MN, for Moreno and Smith.

Jay M. Heffern, Minneapolis City Attorney, Carol Lansing, Assistant City Attorney, Minneapolis, MN, for City of Minneapolis.

John H. Herman, D. Charles Macdonald, Michael A. Ponto, Faegre & Benson LLP, Minneapolis, MN, for Minneapolis Institute of Arts.

Considered and decided by HUDSON, Presiding Judge; PETERSON, Judge; and HARTEN, Judge.

## OPINION

HUDSON, Judge.

In 2002, the Minneapolis Institute of Arts (MIA) applied for an amendment to its 1973 planned unit development (PUD) in order to add a new wing. The Minneapolis City Planning Commission (planning commission) approved the MIA's application and the MIA's neighbors (Smith and Moreno) appealed this decision to the Minneapolis City Council. The city council heard and denied the appeal, approving the MIA's application subject to conditions recommended by the city-planning department. The neighbors appealed this decision to the district court seeking declaratory and injunctive relief. Although not named in the original complaint, the MIA intervened and argued, by way of cross-claim against the city and counterclaim against Smith and Moreno, that its zoning application was automatically approved by operation of Minn.Stat. § 15.99 (2002). In conjunction with the parties' cross-motions for summary judgment, the district court found that the MIA's application was not automatically approved by operation of Minn.Stat. § 15.99. But the district court affirmed, on the merits, the city's approval of the MIA's application. On appeal to this court, Smith and Moreno argue that the city erred by approving the MIA's application because the application was defective and violated Minneapolis zoning ordinances. On appeal and by notice of review, the MIA challenges the district court's denial of its cross-claim against the city, arguing that its application was automatically approved by operation of Minn. Stat. § 15.99, and therefore Smith and Moreno are precluded from challenging the city's action. We affirm as modified.

## FACTS

The Minneapolis Institute of Arts (MIA) is a museum operated for the benefit of the general public. The original building was completed in 1915 and expanded in 1974. The building is located in Dorilus Morrison Park (the park), which was deeded to the Minneapolis Park Board in 1911. The deed had restrictions giving the Minneapolis Society of Fine Arts, the predecessor to the MIA, exclusive rights "to

occupy, use, manage, and control every building erected upon said premises, whether for the purposes of a public museum, or a public gallery of art, or for a school of arts and crafts, for an auditorium, or for any cognate purpose. . . ." Other buildings located within the park are the Minneapolis College of Art and Design (MCAD) and the Children's Theatre Company (CTC). The MCAD and the CTC hold leases from the MIA for the buildings that they occupy within the park. The leases contain provisions giving the MIA control of the leased premises.

The 1974 expansion of the MIA was authorized by a conditional use permit (CUP) for a planned unit development (PUD) that the city approved on February 23, 1973. At the time of the 1973 PUD, the entire PUD area was controlled by the Minneapolis Society of Fine Arts, which was comprised of the MIA, the MCAD, and the CTC. The institutions separated in 1988, and since that time the Minneapolis Society of Fine Arts has consisted solely of the MIA. Because the original museum expansion had been approved as a CUP for a PUD, the city determined that the MIA's proposed new wing would require approval of an amendment to the 1973 PUD.

Minn.Stat. § 15.99 (2002) requires that zoning applications be approved or denied within 60 days, or if the deadline is properly extended by the agency, within 120 days. If an application is not denied within that time frame, it is deemed approved. The MIA submitted an application for amendment of the 1973 CUP for a PUD to add the new wing. The city considered the application complete on July 23, 2002, with a 60-day deadline of September 23, 2002.[1] The MCAD and the CTC consent-ed to and supported the MIA's application for the PUD amendment.

The Minneapolis City Planning Department reviewed the MIA's application and prepared a report recommending approval of the amendment to the PUD. At a September 9, 2002, public hearing, the planning commission approved the MIA's application subject to the conditions recommended by the planning department.

Decisions of the planning commission are final, subject to appeal to the Minneapolis City Council and subsequent judicial review. Minneapolis city ordinances give affected parties an opportunity to appeal the planning commission's decision to the city council within ten days of approval of an application.

On September 19, 2002, appellant Paul Smith appealed the planning commission's approval of the MIA application to the city council. Smith's appeal was first heard on October 1, 2002, after—according to the MIA—the September 23, 2002, expiration of the 60-day deadline. The city, however, determined that Smith's appeal was a separate written request under Minn.Stat. § 15.99, triggering a new 60-day deadline. Thus, according to the city, the new time limit for deciding Smith's appeal would end on November 18, 2002. Then, by letter dated November 8, 2002, the city informed Smith that pursuant to Minn.Stat. § 15.99, it was extending the new 60-day time limit to 120 days; i.e., until January 17, 2003.

The zoning and planning committee of the city council continued the October 1, 2002, hearing to October 29, 2002, where the committee forwarded Smith's appeal to the city council without a recommendation. On November 8, 2002, the city council voted to return the appeal to the zoning

1. The actual 60-day deadline was September 21, 2002; but because September 21 was a Saturday, the deadline was extended to the next business day, which was September 23, 2002. See Minn. R. Civ. P. 6.01.

and planning committee to address the issues raised in Smith's appeal. The zoning and planning committee directed the city-planning department to prepare a supplemental report addressing Smith's issues.

The planning department addressed Smith's issues in a report on November 26, 2002. In the report the planning department recommended that the city council adopt the original findings of the planning commission and deny Smith's appeal, subject to certain conditions. On November 26, 2002, the zoning and planning committee forwarded Smith's appeal to the city council without recommendation. On December 13, 2002, the city council denied Smith's appeal and adopted the findings of the November 26, 2002, planning department report.

On January 15, 2003, Smith and Moreno filed a complaint with the district court for declaratory and injunctive relief and sought a temporary restraining order to halt construction of the new wing. The district court issued an order on May 29, 2003:(1) granting the city's motion for summary judgment in its entirety; (2) granting the MIA's motion for summary judgment as to Smith and Moreno and denying its cross-claim against the city that Minn.Stat. § 15.99 automatically approved its application, and (3) denying Smith and Moreno's motion for summary judgment in all respects. Smith and Moreno appealed to this court, and the MIA filed a notice of review and direct appeal to this court. This consolidated appeal follows.

## ISSUES

I. Did the district court err in determining that an appeal to the Minneapolis City Council challenging the planning commission's approval of a zoning application

triggered a separate 60–day time limit under Minn.Stat. § 15.99 (2002)?

II. Did the automatic approval of the MIA's zoning application by operation of Minn.Stat. § 15.99 cut off the right of appellants Smith and Moreno to appeal or otherwise challenge the city's approval of the zoning application?

## ANALYSIS

### I

■ The MIA contends that the city council and the district court erred by determining that the MIA's application for a PUD amendment was not approved by operation of Minn.Stat. § 15.99 (2002). The MIA contends that Smith's appeal to the city challenging the MIA's application was subject to the original 60–day time limit triggered by the filing of the MIA's initial application on July 23, 2002. The MIA contends that because Smith's appeal was not decided by the city within 60 days of that date, the MIA's application was automatically approved by operation of Minn.Stat. § 15.99.

The city determined that the MIA's application was not automatically approved by operation of Minn.Stat. § 15.99 because Smith's appeal of the planning commission's decision was a separate "written request" under Minn.Stat. § 15.99 that triggered a new 60–day time limit.

Thus, the issue before this court is whether an appeal to a municipal governing body triggers a new, separate 60–day deadline under Minn.Stat. § 15.99, or whether it is part of the original zoning request and must be decided within the original 60– to 120–day time period. This appears to be an issue of first impression as Minn.Stat. § 15.99 does not directly address this issue and the parties do not cite, nor have we found, case law directly on point.

We review de novo the district court's interpretation of the law, including questions of statutory interpretation. *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 190 (Minn.1990), *rehearing denied* (Minn. July 17, 1990).

■ Minn.Stat. § 15.99 provides that

> an agency must approve or deny within 60 days a written request relating to zoning.... Failure of an agency to deny a request within 60 days is approval of the request. If an agency denies the request, it must state in writing the reasons for the denial at the time that it denies the request.

Minn.Stat. § 15.99, subd. 2 (2002). The 60–day timetable begins to run when the agency receives a written request with all the necessary information. *Id.* at subd. 3. The time limit in subdivision 2 may be extended up to a total of 120 days if, before the end of the initial 60–day period, the city provides written notice of the extension to the applicant. *Id.* at subd. 3(f). When the city fails to adhere to the time limit, the result must be that the application was statutorily approved as a matter of law. *See Gun Lake Ass'n v. County of Aitkin*, 612 N.W.2d 177, 181 (Minn.App. 2000), *review denied* (Minn. Sept. 13, 2000), *Demolition Landfill Servs., LLC v. City of Duluth*, 609 N.W.2d 278, 281 (Minn.App.2000), *review denied* (Minn. Jul. 25, 2000).

Here the MIA's application was complete and submitted to the planning commission on July 23, 2002. Accordingly, the city was required to approve or deny the application on or before September 23, 2002, or risk automatic approval. The planning commission approved the MIA's application on September 9, 2002 and the city argues that the planning commission's approval of the MIA's application satisfied the requirement that the city act on the application within 60 days. Smith filed his appeal of the planning commission decision on September 19, 2002. The city considered the appeal a new written request triggering a new 60–day time limit under Minn.Stat. § 15.99. The district court agreed, finding that the planning commission was an "agency" under section 15.99 with the authority and responsibility to approve or deny a zoning request. The planning commission approved the MIA's application on September 9, 2002, more than a week before the 60–day period expired on September 23, 2002. Thus, the district court concluded, the city complied with section 15.99.

But the MIA argues that the planning commission's approval of the application is not an approval for purposes of Minn.Stat. § 15.99 because the planning commission is not an "agency" within the definition of Minn.Stat. § 15.99. We agree.

Minn.Stat. § 15.99, subd. 1, defines an agency as a "department, agency, board, commission, or other group in the executive branch of state government; a statutory or home rule charter city, county, town...." Significantly, the portion of the statute that defines a commission as an agency limits that definition to a commission within the executive branch of state government. The city planning commission was not acting as a statutory or home rule city because the planning commission is merely a level of government within the city's governmental structure. Moreover, the planning commission's approval of a zoning application is not the final decision of the city. Although the Minneapolis city ordinances give the planning commission the authority to approve zoning applications, final approval or denial of an application does not occur until the city council has approved or denied the application after an appeal. M.C.O. § 525.180. While it is true that in some cases the decision of the planning commission will be final be-

cause there is no challenge to its decision, if the decision *is* challenged, the application is not finally approved until the challenge is resolved by the city council.

■ Thus, we conclude that under the appeals process established in Minneapolis, a zoning application is not approved or denied for purposes of Minn.Stat. § 15.99 until the city council—not the planning commission—has resolved all appeals challenging the application. In addition, we find persuasive the MIA's argument that section 15.99 "establishes time deadlines for local governments to take action on *zoning applications.*" *Am. Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 312 (Minn.2001) (emphasis added); *Tollefson Dev., Inc. v. City of Elk River,* 665 N.W.2d 554, 559 (Minn.App.2003) (holding that 60–day time period ran from date of written amendment to the zoning *application* ) (emphasis added), *review denied* (Minn. Sept. 24, 2003). By contrast, an appeal from an adverse decision is not a "request . . . for a permit, license, or other governmental approval of an action" as required by section 15.99. Minn.Stat. § 15.99, subd. 2. An appeal seeks to reverse or overturn the approval of the request; it is not in itself a request for a permit, license, or approval. Thus, no new 60–day time period is triggered.

Consequently, Smith's appeal was subject to the initial 60–day time limit triggered by the MIA's submission of its application on July 23, 2002, and the city council was required to approve or deny the application by September 23, 2002. Here, Smith's appeal to the city council did not result in an approval or denial of the MIA's application within the requisite 60 days, and therefore, the MIA's application was automatically approved by operation of Minn.Stat. § 15.99.

We recognize that automatic approval of a permit application may sometimes be a harsh, extraordinary remedy, especially where, as in this case, the city must act promptly after an internal administrative appeal. But as the MIA rightly observes, if a city has an internal process that permits appeals, then it must structure its appeal process in a manner which permits a decision by the city before the expiration of the deadline. The alternative is to risk approval by operation of section 15.99. Thus, if an internal administrative appeal is filed on day 56, as was the case here, the city can still engage in a thoughtful consideration of the appeal simply by putting in place a system that permits city officials to promptly extend the deadline an additional 60 days.

"[T]he underlying purpose of Minn.Stat. § 15.99 is to keep government agencies from taking too long in deciding issues like the one in question." *Manco of Fairmont, Inc. v. Town Bd. of Rock Dell Township,* 583 N.W.2d 293, 296 (Minn. App.1998) (application for conditional use permit), *review denied* (Minn. Oct. 20, 1998). Although automatic approval of a permit application is an extraordinary remedy, it is a remedy that has been granted by the legislature "notwithstanding any other law to the contrary." Minn. Stat. § 15.99, subd. 2. When a city has failed to satisfy its clear requirements, the remedy shall be granted. *N. States Power Co. v. City of Mendota Heights,* 646 N.W.2d 919, 925 (Minn.App.2002), *review denied* (Minn. Sept. 25, 2002). Accordingly, the MIA's application was automatically approved by operation of Minn.Stat. § 15.99, and the district court erred in characterizing Smith's appeal as a new zoning application thereby permitting a new section 15.99 time period.

## II

Having determined that the MIA's application was approved by operation of

Minn.Stat. § 15.99, we turn to deciding what is properly before this court for review on appeal.

On appeal from a quasi-judicial decision of a governmental body, appellants can challenge the decision on the grounds that it was arbitrary, oppressive, unreasonable, and fraudulent, under an erroneous theory of law or without evidentiary support. *Molnar v. County of Carver Bd. of Comm'rs*, 568 N.W.2d 177, 181 (Minn.App.1997); *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 416–17 (Minn. 1981). A decision is unreasonable, or arbitrary and capricious when it is "based on whim or . . . devoid of articulated reasons." *Mammenga v. State Dep't of Human Servs.*, 442 N.W.2d 786, 789 (Minn.1989). A court is obligated to affirm the decision if the record shows the city engaged in reasoned decision making. *Cable Communications Bd. v. Nor–West Cable Communications P'ship*, 356 N.W.2d 658, 669 (Minn.1984).

But in *Gun Lake Ass'n v. County of Aitkin*, we held that the county board's decision on the neighbor's appeal was compelled by statute due to the county's failure to deny the application within the required 60 days. 612 N.W.2d 177, 182 (Minn.App.2000), *review denied* (Minn. Sept. 13, 2000). We explained that when approval of a zoning application is compelled by Minn.Stat. § 15.99, we cannot then hold that the agency acted in an otherwise arbitrary or improper fashion. *Id.* at 181. Our opinion in *Gun Lake* did not address whether we could review challenges to a zoning application on the grounds that approval of the application was an error of law. But we are persuaded that the holding in *Gun Lake* is logically extended to challenges on the grounds that approval of a zoning application was an error of law. Thus, when approval of a zoning application is statutorily compelled, it cannot then be argued that approval by the city was an error of law.

Here, appellants raise several claims, all of which challenge the city's approval of the MIA's zoning application on the grounds that approval of the application was arbitrary and capricious. But after carefully reviewing the record, we are convinced that only two of appellants' claims—the parking exceptions and the setback requirements—are properly reviewed under the arbitrary and capricious standard. Because we have held that the MIA's zoning application was approved as a result of the application of Minn.Stat. § 15.99, we are likewise compelled to hold that approval of the application with the parking and setback exceptions was not arbitrary and capricious. *Gun Lake Ass'n*, 612 N.W.2d at 182.

Although not characterized as such by appellants, their remaining claims challenge the approval of the application on the grounds that the approval was an error of law.[2] In accordance with our holding that when operation of Minn.Stat. § 15.99 statutorily compels the approval of a zoning application, approval of that application cannot be an error of law, we are compelled to conclude that the city's approval of MIA's application was not an error of law.

## DECISION

The district court erred in finding that the administrative appeal challenging the planning commission's approval of the

2. Appellant's error of law challenges include: (1) the MIA's failure to include all of the original PUD applicants on its zoning application in violation of M.C.O. § 527.50; (2) the MIA's failure to submit a master sign plan in violation of M.C.O. § 527.70(a); (3) the MIA's PUD amendment only has one use in violation of M.C.O. § 520.160; (4) the city's authority to grant exceptions to the PUD requirements is pre-empted by state statute; and (5) the city lacked the authority to approve conditions or exceptions to the MIA's application.

MIA's zoning application triggered a new 60–day time limit under Minn.Stat. § 15.99. Thus, because the city did not act on the application within 60 days of its receipt of the application, the MIA's application was automatically approved by operation of Minn.Stat. § 15.99 (2002). Because the application was automatically approved by operation of Minn.Stat. § 15.99, the city's approval of the application was not arbitrary, capricious, or an error of law.

**Affirmed as modified.**