Richard BREZA, Appellant,

v.

CITY OF MINNETRISTA, Respondent.

No. A04–2286.

Supreme Court of Minnesota.

Dec. 21, 2006.

Gary A. Van Cleve, Jessica B. Rivas, Larkin Hoffman Daly & Lindgren, Ltd., Bloomington, MN, for Appellant.

George C. Hoff, Justin L. Templin, Hoff, Barry & Kuderer, P.A., Eden Prairie, MN, for Respondent.

Donald D. Smith, Christopher P. Renz, Thomsen & Nybeck, P.A., Edina, MN, for Amicus Curiae Minnesota Association of Realtors.

Susan L. Naughton, League of Minnesota Cities, St. Paul, MN, for Amicus Curiae League of Minnesota Cities.

Joseph G. Springer, Robert J. Shainess, Fredrikson & Byron, P.A., Minneapolis, MN, for Amicus Curiae Builders Association of the Twin Cities.

OPINION

GILDEA, Justice.

Appellant Richard Breza filed this action seeking a writ of mandamus. The district court issued a writ directing the City of Minnetrista to grant Breza an exemption from state law requirements relating to wetlands. The court of appeals reversed and we granted Breza's petition for review. We affirm.

Breza bought property on Lake Minnetonka, in the City of Minnetrista, in 1997. The property is located on Halstead Bay, in the shoreland protection zone of Lake Minnetonka, and a large portion of the property consisted of wetlands.[1] Breza contracted to build a home on the property and the builders applied for a permit, which they received from the city on January 28, 1997. The permit specifically stated that "[f]ill is prohibited from wetlands." Breza testified that he never saw the permit.

In July 2000, Breza had 15 to 20 dump truck loads of fill placed in the wetland behind his home. In August 2000, Breza placed an additional four cubic yards of fill in the wetland, and covered the area with sod. The total area of wetland Breza filled covered approximately 5,737 square feet. In December 2000, Breza received a cease and desist order from the Minnesota Department of Natural Resources, directing him to "immediately cease and desist any

activity draining or filling the wetland." The order also informed him that "[i]f you believe that an exemption applies to your activity or if you believe the area is not a wetland, then you should immediately apply to the Local Government Unit for an exemption or no-loss determination."[2] The order provided that if Breza did not apply for an exemption or a no-loss determination within three weeks, or if his application were denied, then restoration may be required.

Breza filed an application for an exemption with the city on December 29, 2000. In his application and attached letter, Breza indicated that "[o]n approximately August 4 & 5 there was approximately 4 cubic yards of black dirt in the back yard and sod placed over that area. * * * I would like to apply for an exemption." By letter dated January 16, 2002, the city informed Breza that the city had denied his exemption application. The letter also indicated that the city would not be able to determine the "next steps and [Breza's] options" until the snow melted.

In a letter dated April 8, 2002, the city informed Breza that "the fill in this wetland will need to be removed rather than replaced via creation of another wetland off site or purchase from a wetland bank."[3]

Breza responded to the city and cited Minn.Stat. § 15.99 (2000).[4] Breza main-

---

1. The parties stipulated that the property is located within the shoreland protection zone of Lake Minnetonka.

2. A no-loss determination is a determination that the proposed activity does not result in a loss of wetlands. Minn. R. 8420.0220 (1999). Such a determination does not apply to this case.

3. A wetland bank is a system whereby individuals can deposit credits (in the form of restored or created wetlands) into a bank to be

sold to other individuals who are required to replace wetlands. The purchase of wetland credits is done in lieu of replacement. Wetland credits must be purchased directly from the individual who deposited the credits into the wetland bank. *See* Minn. R. 8420.0740 (1999).

4. At the time Breza submitted his application, section 15.99 provided that "[e]xcept as otherwise provided in this section and notwithstanding any other law to the contrary, an agency must approve or deny within 60 days

tained that section 15.99 required that the city act on his application within 60 days. Because the city had not acted on his application within this time period, Breza contended that his exemption application had been granted.

The city agreed that it had violated section 15.99 by taking longer than 60 days to respond to Breza's application and that as a result, Breza's application for an exemption was automatically granted.[5] The city claimed, however, that the only exemption Breza qualified for under the Wetland Conservation Act was a 400 square foot de minimis exemption, and therefore that was the full extent of the exemption that was granted by operation of section 15.99 when the city failed to respond within the 60–day time period.

On August 22, 2002, the Commissioner of Natural Resources ordered Breza to restore approximately 5,337 square feet (the original 5,737 square foot area filled, minus the 400 square foot exemption) of the filled land to its natural wetland state. This restoration order directed that prior to September 15, 2002, Breza must either submit a restoration plan, submit an application for approval of a replacement plan, or request an exemption or no-loss determination.

Breza did not submit either a restoration plan or a replacement plan. But he was given an opportunity to meet with the Minnetrista City Council on February 3, 2003. Prior to the meeting, Breza presented the city council with a proposal, whereby he would restore 2,860 square feet of the wetland on his property and make a cash payment to the city of $4,800 to be used for restoration elsewhere. The city council rejected Breza's proposal.

Breza sought a writ of mandamus from the district court. The district court found that Breza "applied for an exemption for the 5,757 square feet that had been filled,"[6] and that the city took more than one year to respond to the application. The court held that Breza's request was approved by operation of law under Minn. Stat. § 15.99, and issued a writ of mandamus compelling the city to approve his exemption request. The city appealed to the Minnesota Court of Appeals, which reversed. *Breza v. City of Minnetrista,* 706 N.W.2d 512, 519 (Minn.App.2005). That court held that because the city did not have the authority to grant an exemption for more than 400 square feet, the city had fully satisfied its official duties and a writ of mandamus was therefore not appropriate. *Id.* at 518–519.

### I.

 Breza brought this action seeking a writ of mandamus. To be entitled to mandamus relief, Breza must show that: 1) the city "failed to perform an official duty clearly imposed by law"; 2) he "suffered a public wrong" and was specifically

a written request * * * for a permit, license, or other governmental approval of an action. Failure of an agency to deny a request within 60 days is approval of the request." Minn. Stat. § 15.99, subd. 2 (2000).

**5.** The record does not reflect why it took the city more than a year to respond to Breza's application.

**6.** There is a slight discrepancy in the number of square feet for which Breza claims to have applied (5,737) and the number of square feet that the district court found covered by his application (5,757). There is also arguably a discrepancy between the text of Breza's application, which requested an exemption for "4 cubic yards" of fill, and the district court's finding that he applied for an exemption for 5,757 square feet. But the city does not ask us to examine whether the district court's finding on the scope of the exemption requested is clearly erroneous. Accordingly, that question is not before us.

injured by the city's failure; and 3) he has "no other adequate legal remedy." *See N. States Power Co. v. Minn. Metro. Council,* 684 N.W.2d 485, 491 (Minn.2004). The district court's decision to issue the writ was based on the determination that Breza's application was approved by operation of law. When a decision on a writ of mandamus is based solely on a legal determination, we review that decision de novo. *See Castor v. City of Minneapolis,* 429 N.W.2d 244, 245 (Minn.1988). In order to determine whether Breza's application was approved by operation of law, this court must construe section 15.99 as well as portions of the Wetland Conservation Act (WCA). Statutory construction is also subject to de novo review. *Lietz v. N. States Power Co.,* 718 N.W.2d 865, 869 (Minn.2006).

We first examine the scope of relief the city could have granted had it approved Breza's application within the section 15.99 deadline. We note that the application simply requested an exemption, with no specification beyond the description that "there was approximately 4 cubic yards of black dirt in the back yard and sod placed over that area." There was no suggested restoration plan, request for approval of a replacement plan, or request for a no-loss determination.

■ The starting point for our analysis is the principle, drawn from the Minnesota Constitution, that municipalities, like the City of Minnetrista, possess no inherent powers and are purely creatures of the legislature. *See* Minn. Const. art. XII, § 3 ("The legislature may provide by law for the creation, organization, administra-

tion, consolidation, division and dissolution of local government units and their functions * * *."). Thus, municipalities possess only those powers that are conferred by statute or implied as necessary to carry out legislatively conferred powers. *See Minnetonka Electric Co. v. Village of Golden Valley,* 273 Minn. 301, 304, 141 N.W.2d 138, 140 (1966) (ruling that where state legislature has preempted the field, municipal ordinance that conflicted with state law could not operate); *Village of Brooklyn Center v. Rippen,* 255 Minn. 334, 336, 96 N.W.2d 585, 587 (1959) (ruling that village did not have implied power to license boats). The City of Minnetrista therefore has no inherent power to give Breza permission to fill wetland that state law does not allow to be filled.

We turn next to an examination of relevant statutory provisions to determine the scope of authority vested in the city with respect to wetland conservation.[7] In the WCA, the legislature articulated its finding that

> the wetlands of Minnesota provide public value by conserving surface waters, maintaining and improving water quality, preserving wildlife habitat, providing recreational opportunities * * * and enhancing the natural beauty of the landscape, and are important to comprehensive water management.

Minn.Stat. § 103A.201, subd. 2(b) (2004). In the Water Law, the legislature also set forth a "wetland policy" statement declaring that

> it is in the public interest to preserve the wetlands of the state to conserve

---

7. The relevant laws governing wetland conservation are found primarily in the Wetland Conservation Act of 1991, ch. 354, 1991 Minn. Laws 2794 (codified in scattered sections of Minn.Stat. chs. 103A–103G), as well as in additional provisions of the Water Law, Minn.Stat. chs. 103A–103G (2004). Rules implementing the Wetland Conservation Act were developed by the Board of Water and Soil Resources. *See* Minn. R. 8420.0100–8420.1060 (1999) ("This chapter implements the Wetland Conservation Act of 1991 * * *.").

surface waters, maintain and improve water quality, preserve wildlife habitat, reduce runoff, provide for floodwater retention, reduce stream sedimentation, contribute to improved subsurface moisture, enhance the natural beauty of the landscape, and promote comprehensive and total water management planning. Minn.Stat. § 103A.202 (2004). Finally, the legislature found that it is in the public interest to "achieve no net loss in the quantity, quality, and biological diversity of Minnesota's existing wetlands." Minn. Stat. § 103A.201, subd. 2(b)(1).

To achieve the goal of no net loss of wetlands, the WCA provides that "[w]etlands must not be drained or filled, wholly or partially, unless replaced by restoring or creating wetland areas of at least equal public value under [an approved] replacement plan." Minn.Stat. § 103G.222, subd. 1(a) (2004). The city has authority under the WCA to approve, where appropriate, replacement plans in which property owners drain or fill wetlands and replace the lost wetlands with newly created or restored wetlands in another location. Minn. Stat. § 103G.2242, subd. 1(b) (2004) ("[A] replacement plan must be approved by a resolution of the governing body of the local government unit * * *.").[8]

Finally, the legislature has defined ten specific types of activities for which an exemption from the no-filling-without-re-placement prohibition can be approved.[9] Local government units (LGUs)[10] like the city have the authority to grant exemptions. Minn. R. 8420.0210 (1999) ("Local government units may offer exemption certificates as part of the wetland program in their jurisdiction.").

■ The city argues that the only exemption the legislature authorized it to approve for Breza's property under the WCA is a 400 square foot de minimis exemption. *See* Minn.Stat. § 103G.2241, subd. 9(a)(5) (2000) (authorizing exemption of 400 square feet for property "in the shoreland wetland protection zone"). We agree. By applying for an exemption, Breza was asking the city to find that the activity he engaged in was exempt from the requirement that the filled wetland on his property be replaced. *See* Minn.Stat. §§ 103G.222, subd. 1(a), 103G.2241 (2000). In order for the city to affirmatively approve Breza's requested *exemption*, the filling of the wetland on his property would have to have qualified as one of the exempted activities under the statute. Because Breza's property is located in the shoreland protection zone of Lake Minnetonka, the only exemption Breza qualified for under the WCA was the 400 square foot de minimis exemption. The city had no authority, under the WCA, to allow fill covering more than 400 square feet to remain in the wetland on Breza's property. Had the city granted Breza's application

---

8. The WCA and its implementing rules include detailed requirements for replacement plans and the process by which local government units may consider such plans for approval. *See* Minn.Stat. §§ 103G.222 (2000), 103G.2242 (2000); Minn. R. 8420.0230 (1999), 8420.0520 (1999), 8420.0540 (1999).

9. The exemptions include 1) certain agricultural activities; 2) public drainage systems; 3) activities exempt under federal regulations; 4) activities in a restored wetland under a contract or easement allowing the landowner the right to drain the restored wetland; 5)

activities in wetlands that were incidentally created; 6) certain utilities and public works projects; 7) certain forestry activities; 8) certain development projects approved within five years before July 1, 1991; 9) de minims activity; and 10) wildlife habitat improvement. Minn.Stat. § 103G.2241 (2000).

10. Within the seven-county metropolitan area, "local government unit" is defined as including "a city council, [or] a town board." Minn.Stat. § 103G.005, subd. 10e(2) (2000).

within the section 15.99 deadline, under the WCA it could not have allowed Breza to retain more than the 400 square feet of fill covered by the subdivision 9(a)(5) de minimis exemption.

The city has already recognized that the 400 square foot de minimis exemption was granted due to its failure to act on Breza's application within 60 days as required by Minn.Stat. § 15.99. Breza does not contend that any of the other exemptions under section 103G.2241 apply to his application. He also concedes that the city did not have the authority under the WCA to grant him permission to fill 5,737 square feet of wetland on his property.[11]

But Breza argues that the WCA is not the only relevant source of authority. He relies on Minn.Stat. § 15.99 and argues that the consequence of the city's failure to act on his application within 60 days must be that his entire request to fill 5,737 square feet of wetland was granted. He argues that the plain language of section 15.99 mandates this result.

There is no dispute that section 15.99 applies here. The legislature specifically incorporated the section's 60–day timeline into the WCA. *See* Minn.Stat. § 103G.2242, subd. 4 (2004) ("Upon receiving and considering all required data, the local government unit * * * must act on all replacement plan applications, banking plan applications, and exemption or no-loss determination requests in compliance with section 15.99."). There likewise is no dispute that the city failed to act within the timeline required by section 15.99. The question before us is whether the granting of Breza's application by operation of section 15.99, confers on Breza greater relief than the city was authorized to grant had it acted on time. We turn now to that question.

## II.

The version of section 15.99 in effect when Breza applied for an exemption provided, in relevant part:

> [E]xcept as otherwise provided in this section and notwithstanding any other law to the contrary, an agency must approve or deny within 60 days a written request * * * for a permit, license, or other governmental approval of an action. Failure of an agency to deny a request within 60 days is approval of the request.

Minn.Stat. § 15.99, subd. 2. "Agency" is defined as a "city, county, town, * * * and any other political subdivision of the state." *Id.,* subd. 1(b).

We examined section 15.99 in *American Tower, L.P. v. City of Grant,* 636 N.W.2d 309 (Minn.2001).[12] In that case, we recog-

---

**11.** Breza argues that it is not beyond the city's authority to grant his application because even if he did not qualify for an exemption, the WCA allows wetlands to be filled or drained as long as they are replaced by wetlands of equal value. But Breza concedes that he never submitted a replacement plan to the city that met the requirements of the WCA. Rather, he applied only for an exemption. When Breza submitted his application to the City of Minnetrista in December 2000, he proposed no replacement plan. He likewise submitted no replacement plan in response to the August 2002 notice he received from the Department of Natural Resources. In February of 2003, Breza did submit a proposal to the Minnetrista City Council to restore slightly more than half of the wetlands on his property and to pay the city $4,800. This proposal was in essence an offer to settle the dispute with the city; it was not, Breza concedes, a replacement plan. *See* Minn.Stat. §§ 103G.222, 103G.2242; Minn. R. 8420.0230, 8420.0520, 8420.0540 (collectively discussing replacement plans). Accordingly, that the city may have had authority in the abstract to consider replacement plans has no relevance to our decision here.

**12.** In *American Tower,* we construed section 15.99, subd. 3(f) (2000), which provides for extensions of the 60–day deadline. 636

nized that the 60–day deadline in section 15.99 was "definitive." 636 N.W.2d at 313. The court of appeals has also construed section 15.99 in a number of cases, and Breza is correct to note that these cases have strictly enforced the 60–day rule by consistently holding that an agency's failure to comply with the section 15.99 timeline results in automatic approval of the request at issue. *See, e.g., Kramer v. Otter Tail County Bd. of Comm'rs,* 647 N.W.2d 23, 26 (Minn.App.2002).

Breza also relies on two cases that involve *claims* that the LGU approvals violated a city ordinance or state statute. *See Gun Lake Ass'n v. County of Aitkin,* 612 N.W.2d 177, 182 (Minn.App.2000) ("Relators allege that the grant of the * * * application is defective because the county failed to abide by relevant statutes and ordinances * * *."), *rev. denied* (Minn. Sept. 13, 2000); *Moreno v. City of Minneapolis,* 676 N.W.2d 1, 2 (Minn.App.2004) ("On appeal to this court, [appellants] argue that the city erred by approving the * * * application because the application was defective and violated Minneapolis zoning ordinances."). In these cases, the planning commissions of the LGUs acted on requests and those actions were appealed to the full governing bodies of the LGUs by other affected parties. *Gun Lake,* 612 N.W.2d at 180; *Moreno,* 676 N.W.2d at 2. In both cases, the governing bodies of the LGUs denied the appeals after the 60–day time limit and the affected parties appealed to the court of appeals. *Gun Lake,* 612 N.W.2d at 180; *Moreno,* 676 N.W.2d at 3.

In *Gun Lake,* the court of appeals held that because section 15.99 required the request to be granted, the LGU did not act

arbitrarily or capriciously in denying the appeal of the decision of its planning commission. 612 N.W.2d at 182. The court of appeals extended the rationale of *Gun Lake* one step further in *Moreno.* Without any analysis, the *Moreno* court simply concluded that because section 15.99 compelled the granting of the request, it could not be an error of law for the LGU to deny the appeal. 676 N.W.2d at 7. Neither *Gun Lake* nor *Moreno* confronted or analyzed the issue of what happens when an approval under section 15.99 conflicts with the substantive authority given to the LGU in state law. We proceed to that analysis now.

■ Breza argues that the language of section 15.99 specifically addresses the impact of the 60–day rule on other inconsistent law. He argues that the clause "notwithstanding any other law to the contrary" in section 15.99, subd. 2, is preemptive in nature and makes clear that even if the city did not have the legal authority to approve the application under the WCA, it is nonetheless approved by operation of section 15.99.

The city argues that section 15.99 is a timing statute and cannot operate to give substantive authority to LGUs that they do not already possess. The city argues that Breza's argument takes the clause "notwithstanding any other law to the contrary" out of context. The city points out that that clause modifies only the sentence of which it is a part, and not the entire paragraph. Section 15.99 reads "notwithstanding any other law to the contrary, an agency must approve or deny within 60 days a written request." The city argues that this simply means that the 60–day

---

N.W.2d at 311. The city in that case had provided in an application form that the 60–day deadline was extended in all cases for an additional 60 days. *Id.* We held that the city

had no statutory authority to grant itself an extension to rule on applications before it even received the applications. *Id.* at 313.

rule applies, notwithstanding any other timing rules to the contrary.

The plain language of the statute supports the city's position.[13] If the legislature wanted section 15.99 to preempt all other substantive law, it would have said "if an agency fails to deny a request within 60 days, the request is approved notwithstanding any other law." Instead, the notwithstanding clause preempts only other timelines.[14]

■ The consequence of the city's failure to act within 60 days is that any deficiencies that might have existed in Breza's exemption application are deemed waived, and the application is approved. The breadth of the exemption approved, however, is limited by the scope of the city's authority to grant an exemption, as defined in the WCA. *See Minnetonka Elec. Co.*, 273 Minn. at 304, 141 N.W.2d at 140. In Breza's case, state law gave the city authority to grant Breza a 400 square foot exemption, and that is the extent of the city's authority under state law.[15] We hold that Minn.Stat. § 15.99 cannot operate to grant a broader exemption.[16]

The city has recognized that Breza was granted a 400 square foot exemption, the broadest exemption authorized under the WCA based on Breza's application. Accordingly, the city has performed the clear responsibility required of it by section 15.99, and a writ of mandamus compelling the city to grant a larger exemption is an error of law.

Affirmed.

13. Because the statutory language is clear, we do not resort to legislative history. We note, however, that if we were to resort to legislative history, we have been directed to no authority indicating the legislature intended section 15.99 to expand the substantive authority given to LGUs.

14. The city notes that the legislature amended section 15.99 to incorporate references to specific statutes that give LGUs different time frames in which to act. The city contends that these changes reinforce the legislature's intent that section 15.99 preempts other timelines, and not other substantive law. *See* Minn.Stat. § 15.99 (2004) ("Except as otherwise provided in this section, section 462.358, subdivision 3b [providing deadlines of 120 and 60 days for preliminary and final action on subdivision applications], or chapter 505

[providing other deadlines for actions related to plats], and notwithstanding any other law to the contrary, an agency must approve or deny within 60 days a written request * * *.").

15. We note that this case does not involve an issue on which the city has discretion, such as approval of a replacement plan submitted under the WCA or the operation of city rules or ordinances that the city has authority to modify. This opinion should not be read to indicate how we might view the application of Minn.Stat. § 15.99 in matters of discretionary decision-making by LGUs. We leave that question for another day.

16. To the extent *Gun Lake* and *Moreno* can be read to suggest a contrary result, they are overruled.