**WESTCHESTER FIRE INSURANCE COMPANY, assignee of Industrial Indemnity Company, Respondent,**

v.

**Frederick HASBARGEN, Appellant.**

No. C7–01–222.

Court of Appeals of Minnesota.

Aug. 7, 2001.

Michael D. Nelson, Ohnstad Twichell, P.C., West Fargo, ND, for respondent.

Eric A. Bartsch, Marc A. Al, Kevin R. Prohaska, Lindquist Vennum P.L.L.P., Minneapolis, for appellant.

Considered and decided by G. Barry ANDERSON, Presiding Judge, RANDALL, Judge, and SCHUMACHER, Judge.

## OPINION

SCHUMACHER, ROBERT H., Judge.

Respondent Westchester Fire Insurance Company, assignee of Industrial Indemnity Company, brought an action to renew a judgment against appellant Frederick Hasbargen that was almost ten years old. Hasbargen argued that the judgment had expired after three years pursuant to Minn.Stat. 550.366, subd. 2 (2000), applicable to judgments for debts on agricultural property. The district court ruled that section 550.366 was inapplicable and renewed the judgment. We reverse.

## FACTS

Hasbargen, a farmer, became a member of American Energy, Inc., a North Dakota cooperative, which planned to operate a facility for processing grain into ethyl alcohol. By 1982, Hasbargen, along with some 1,100 other farmers, executed a grain supply agreement with American Energy.

In August 1982, American Energy borrowed $2.5 million from Beneficial Finance Leasing Corporation (Beneficial) and executed a promissory note for that amount. American Energy assigned the grain supply agreements to Beneficial as security and obtained a contract repudiation policy from Industrial Indemnity Company guaranteeing repayment of the loan. American Energy then failed to pay the note when due.

Beneficial demanded delivery of the grain from the farmers without paying them, pursuant to the unconditional delivery obligations contained in the grain supply agreements, but the farmers refused to comply. Industrial Indemnity satisfied the loan obligation and then obtained settlements or money judgments in federal district court against the farmers, including Hasbargen. The judgment of $377,760.80 against Hasbargen was transcribed to the Traverse County District Court where it was docketed on September 6, 1990.

Industrial Indemnity then assigned its rights under the judgment to respondent Westchester Fire Insurance Company (Westchester) on April 4, 2000, which sued to renew the judgment on April 27, 2000. Hasbargen asserted that the judgment had expired in 1993 pursuant to the three-year limitation on execution of judgments related to agricultural property under Minn. Stat. 550.366 (2000). The district court rejected Hasbargen's defense and renewed the judgment which, with postjudgment interest, amounted to $608,279.96. This appeal followed.

## ISSUE

Did the district court err in holding that the three-year limitation on the execution of a judgment under Minn.Stat. 550.366 (2000) does not apply because the judgment was not for a "debt on agricultural property"?

## ANALYSIS

■ Findings of fact will not be reversed unless clearly erroneous. Minn. R. Civ. P. 52.01. Statutory interpretation is a question of law that an appellate court reviews de novo. *Harms v. Oak Meadows*, 619 N.W.2d 201, 202 (Minn.2000).

■ In constructing and interpreting Minnesota statutes, the court seeks to effectuate the intent of the legislature. *Current Tech. Concepts, Inc. v. Irie Enters., Inc.*, 530 N.W.2d 539, 543 (Minn.1995). "Words and phrases are construed * * * according to their common and approved usage," unless doing so would be inconsistent with the manifest intent of the legislature. Minn.Stat. 645.08(1) (2000). When the language is unambiguous, the court must apply the plain meaning of the statute. *Current Tech. Concepts*, 530 N.W.2d at 543. If the statute is reasonably susceptible to more than one meaning, it is ambiguous and the rules of statutory construction will be applied. *Id.;* Minn.Stat. 645.16. Farm protection statutes are remedial and must be liberally construed to achieve their intended purpose. *Harbal v. Federal Land Bank*, 449 N.W.2d 442, 446–47 (Minn.App.1989), *review denied* (Minn. Feb. 21, 1990).

In 1986, the legislature passed a host of laws relating to agriculture to assist farmers. *See generally* 1986 Minn. Laws ch. 398. Included in this act were laws intended to address the problem of farm foreclosure sales and resulting deficiency judgments, which the legislature found were "debilitating the people foreclosed and taking away their hope for readjustment after foreclosure, which is detrimental to the welfare of the state." 1986 Minn. Laws ch. 398, art. 19, 1.

One of the ways the legislature addressed this problem was to shorten the time in which certain deficiency judgments may be enforced. Rather than the usual ten-year period under Minn.Stat. 550.01 (2000), a judgment to enforce a mortgage debt on agricultural property is subject to a three-year limitation on execution.

> A deficiency judgment or personal judgment obtained to enforce a mortgage debt on property used in agricultural production may be enforced by execution, but the judgment may not be executed after three years from the date judgment was entered.

Minn.Stat. 582.30, subd. 7 (2000). In 1987, the legislature expanded the three-year limit to judgments for debts relating to personal property used in farming operations by enacting Minn.Stat. 550.366, the statute at issue here. 1987 Minn. Laws ch. 292, 1. Subdivision 2 provides:

> A judgment for the unpaid balance of a debt on agricultural property owed by a farm debtor may not be executed upon real or personal property after three years from the date the judgment was entered.

Minn.Stat. 550.366, subd. 2 (2000).

When Westchester Fire sought to renew the judgment, Hasbargen asserted the three-year limit on execution of judgments under subdivision 2. The district court determined that section 550.366 did not apply to Hasbargen because the judgment was not one for an unpaid balance of a debt on personal property used in a farm operation. Instead, the court characterized the judgment as based on breach of contract, albeit a contract of an agricultural nature.

 The major area of dispute is whether the judgment here is for "the unpaid balance of a debt." Hasbargen contends that the word "debt" has broad meaning, reaching not only money, but whatever one is bound to render to another, such as goods or services. *See Black's Law Dictionary* 410 (7th ed.1999) (defining debt as "[l]iability on a claim; a specific sum of money due by agreement or otherwise" and a "nonmonetary thing that one person owes another, such as goods or services"). In insolvency proceedings, "debt" has been described as being of "large import," and includes "all that is due to a man under any form of obligation or promise." *Daniels v. Palmer*, 41 Minn. 116, 121, 42 N.W. 855, 857 (1889) (citation omitted) (holding that persons who held receipts for grain were creditors and warehouseman who held grain was debtor for purposes of insolvency law). "A debt includes not merely money due by contract, but whatever one is bound to render to another, whether money, goods, or services." *In re Robinson's Estate*, 175 Misc. 433, 23 N.Y.S.2d 905, 906 (N.Y.Sur.Ct. 1940) (citation omitted) (addressing meaning of "indebted" to include repayment of money or redelivery of securities advanced in context of will).

Hasbargen contends that a farmer may default on a farm obligation, resulting in a debt, in one of two ways. First, a farmer may receive something of value today, such as chemicals, seeds, or equipment, in exchange for future payment, and may default by failing to pay for the goods. There is no dispute that such a debt would be subject to Minn.Stat. 550.366. Secondly, a farmer who joins an ethanol cooperative also receives something of value today, membership in a cooperative with a fixed market for the product, in exchange for a promise to deliver something of value in the future, the grain. Hasbargen contends that if the future obligation is unmet by failing to deliver the grain, a default occurs, resulting in a debt. Hasbargen contends these two situations are logically equivalent and both are debts within the meaning of Minn.Stat. 550.366, subd. 2. *See*

*Daniels,* 41 Minn. at 122, 42 N.W. at 857 (holding that holders of receipts for grain issued by a warehouseman are creditors within the meaning of the insolvency act). Considering the broad remedial purpose of the act as well as the statutory language, we agree and hold that the farmer's default on the grain obligation constitutes a debt that is subject to the three-year limit on execution in Minn.Stat. 550.366, subd. 2.

■ Next, we briefly address whether the debt is on "agricultural property." Minn.Stat. 550.366, subd. 2. The statute defines agricultural property as "personal property that is used in a farm operation." Minn.Stat. 550.366, subd. 1(a). Personal property is "[a]ny movable or intangible thing that is subject to ownership and not classified as real property." *Black's Law Dictionary* at 1233. Westchester Fire argues that a future contract to deliver grain does not constitute personal property. But an executory contract for the future delivery of goods is not real property and is subject to ownership. *See Griffin v. Minnesota Sugar,* 162 Minn. 240, 243–44, 202 N.W. 445, 447 (1925) (applying the Uniform Sales Act and noting that future crops may be subject to mortgages). Thus, it constitutes personal property. *Black's Law Dictionary* at 1233. Finally, it appears undisputed that Hasbargen was engaged in a farm operation.

### DECISION

The district court erred in renewing the judgment and holding that Minn.Stat. § 550.366, subd. 2 (2000), did not apply to the judgment.

**Reversed.**