**GLACIAL PLAINS COOPERATIVE,**
f/k/a Swift Co-op Oil Company,
Appellant,

v.

**Thomas HUGHES, Jr., Respondent.**

**No. A05–148.**

Court of Appeals of Minnesota.

Sept. 27, 2005.

Tara J. Ulmaniec, Wilcox & Ulmaniec, P.A., Benson, MN, for appellant.

M. Barry Darval, Darval, Wermerskirchen & Frank, P.A., Willmar, MN, for respondent.

Considered and decided by HUDSON, Presiding Judge; TOUSSAINT, Chief Judge; and FORSBERG, Judge.*

## OPINION

HUDSON, Judge.

Appellant Glacial Plains Cooperative ("Glacial Plains") challenges the district court's grant of declaratory and injunctive relief to respondent Thomas Hughes, Jr. The district court held that, because respondent was a farm debtor and the debts were incurred on agricultural property, respondent is entitled to the protections of Minn.Stat. § 550.366 (2004). On appeal, Glacial Plains argues that because respondent is now employed as a truck driver, he should not be protected by Minn.Stat. § 550.366. We affirm.

## FACTS

The underlying facts of this case are undisputed. Respondent worked as a farmer in Swift County from approximately 1981 until 2001. On March 15, 2002, Glacial Plains obtained a judgment against respondent in the amount of $28,802.69. Respondent incurred this debt in his capacity as a farmer and used the funds to purchase chemicals, fertilizer, and farm supplies.

In April 2003, respondent began working full time for DeVaan Trucking Company as a truck driver. Glacial Plains served respondent with a garnishment exemption notice on March 26, 2004. Glacial Plains' garnishment notice made no mention of Minn.Stat. § 550.366, which provides limitations for judgments on debts related to agricultural property. Beginning in April 2004, Glacial Plains garnished between

$150 and $175 from respondent's bi-weekly paychecks.

In September 2004, respondent consulted an attorney, and, on September 27, 2004, respondent's attorney sent Glacial Plains a letter requesting the return of all wages and assets garnished from respondent pursuant to the garnishment notice. Glacial Plains replied on September 28, 2004, that respondent's "assertion as to the applicability of [Minn.Stat. § 550.366] seems to be a huge stretch" and recommended that respondent "set up a payment plan with Glacial Plains...."

On October 19, 2004, respondent moved for declaratory and injunctive relief and for the return of his garnished earnings. On December 9, 2004, the district court granted respondent's request for declaratory and injunctive relief and ordered Glacial Plains to return respondent's garnished earnings. This appeal follows.

## ISSUE

Did the district court err in applying the protections of Minn.Stat. § 550.366 (2004), including a three-year statute of limitations on collection actions and a prohibition against attaching real or personal property acquired after judgment on an unpaid farming debt, to a debt incurred by a farmer who is currently employed fulltime in another profession?

## ANALYSIS

Glacial Plains challenges the district court's application of Minn.Stat. § 550.366 (2004) to its judgment against respondent. This is an issue of statutory construction, which we review de novo. *Eischen Cabinet Co. v. Hildebrandt,* 683 N.W.2d 813, 815 (Minn.2004).

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

■ The purpose of statutory interpretation is to ascertain the legislature's intent. Minn.Stat. § 645.16 (2004). And when the words of a law as applied to an existing situation are free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing its spirit. *Id; see also Homart Dev. Co. v. County of Hennepin,* 538 N.W.2d 907, 911 (Minn.1995) (stating that if a statute is free from ambiguity, court looks only at a statute's plain meaning). If the statute is reasonably susceptible to more than one meaning, it is ambiguous, and the rules of statutory construction apply. Minn.Stat. § 645.16. If the language of a statute is plain, that meaning is applied as a manifestation of legislative intent. *Kersten v. Minn. Mut. Life Ins. Co.,* 608 N.W.2d 869, 874–75 (Minn.2000).

The full text of Minn.Stat. § 550.366, entitled "Judgments on debts related to agricultural property," is as follows:

**Subdivision 1. Definitions.** For purposes of this section, the following terms have the meanings given:

(a) **Agricultural property.** "Agricultural property" means personal property that is used in a farm operation.

(b) **Farm debtor.** "Farm debtor" means a person who has incurred debt while in the operation of a family farm, a family farm corporation, or an authorized farm corporation as defined in section 500.24, subdivision 2.

**Subd. 2. Limits on execution.** A judgment for the unpaid balance of a debt on agricultural property owed by a farm debtor may not be executed upon real or personal property after three years from the date the judgment was entered.

**Subd. 3. Attachment to newly acquired property.** A judgment for the unpaid balance of a debt on agricultural property owed by a farm debtor does not attach to real or personal property that is acquired by the farm debtor after the judgment is entered.

■ Glacial Plains argues first that, because respondent works as a truck driver and is no longer a farmer, respondent should not be protected by the three-year statute of limitations established by Minn. Stat. § 550.366, subd. 2. Glacial Plains contends that "[a]llowing non-farmer Respondent and other non-farmer Respondents to have the three year statute of limitations apply would be detrimental to the economy and the welfare of the state because this application of the statute" encourages debtors to claim their debt as "farm debt, leave farming, and have a shortened period for collection."

But Glacial Plains does not dispute that respondent incurred the judgment debt while operating a farm, nor does it dispute that the property for which respondent incurred the debt was used in a farm operation. *See* Minn.Stat. § 550.366, subd. 1 (defining "farm debtor" and "agricultural property"). Thus, under the plain language of section 550.366, respondent is a "farm debtor" and the property respondent bought, whereby he incurred the debt to Glacial Plains, was clearly "agricultural property." *Id.* Accordingly, we conclude that Glacial Plains' argument is wholly without merit. *See Westchester Fire Ins. Co. v. Hasbargen,* 632 N.W.2d 754, 757 (Minn.App.2001) ("[A] farmer may receive something of value today, such as chemicals, seeds, or equipment, in exchange for future payment, and may default by failing to pay for the goods. There is no dispute that such a debt would be subject to Minn. Stat. § 550.366.").

Glacial Plains also argues that "it would be inconsistent with the manifest intent of the legislature to include wages from non-agricultural employment within the defini-

tion of 'personal property' within [Minn. Stat. § 550.366]." But when interpreting a statute, words and phrases should be construed according to their common and approved usage. Minn.Stat. § 645.08(1) (2004). "Personal property" is commonly defined as "[a]ny movable or intangible thing that is subject to ownership and not classified as real property." *Black's Law Dictionary* 1233 (7th ed.1999). Respondent's wages are clearly personal property. It is also undisputed that respondent began earning the wages at issue here after Glacial Plains obtained the judgment against him. Accordingly, the plain language of Minn.Stat. § 550.366, subd. 3, which makes no distinction between a "farm debtor" who is no longer a farmer and one who continues to farm, must be applied to protect respondent's post-judgment wages.

Additionally, were we to embrace Glacial Plains' proposed interpretation of Minn. Stat. § 550.366, we would be endorsing a goal that is diametrically opposed to that expressed by the legislature. This court recently discussed Minn.Stat. § 550.366 and noted:

> In 1986, the legislature passed a host of laws relating to agriculture to assist farmers. Included in this act were laws intended to address the problem of farm foreclosure sales and resulting deficiency judgments, which the legislature found were debilitating the people foreclosed and taking away their hope for readjustment after foreclosure, which is detrimental to the welfare of the state.

> One of the ways the legislature addressed this problem was to shorten the time in which certain deficiency judgments may be enforced.... [And] in 1987, the legislature expanded the three-year limit to judgments for debts relating to personal property used in farming

operations by enacting Minn.Stat. § 550.366....

*Westchester Fire Ins. Co.,* 632 N.W.2d at 756–57 (quotation and citations omitted).

With this historical context in mind, we conclude that Minn.Stat. § 550.366 was intended to encourage Minnesotans to pursue farming as a profession, despite the financial risks involved. Glacial Plains argues that the application of Minn.Stat. § 550.366 to cases such as this will have a chilling effect on the ability of farmers to obtain financing for their farms. But the plain language of the statute indicates that the legislature was more concerned with inducing people to farm than with inducing lenders to advance credit to farmers. Accordingly, we find no merit in Glacial Plains' arguments.

## DECISION

Because the plain language of Minn.Stat. § 550.366 (2004) indicates legislative intent to protect debtors such as respondent, we affirm the district court's order in all respects.

**Affirmed.**