In the Matter of the WELFARE OF
the CHILD OF S.L.J., Parent.

No. A09–0080.

Court of Appeals of Minnesota.

Sept. 1, 2009.

G. Paul Beaumaster, Rice County Attorney, Benjamin Bejar, Assistant County Attorney, Faribault, MN, for appellant Rice County.

Grant D. Sanders, Sanders and Co., Ltd., Faribault, MN, for respondent S.L.J.

John L. Fossum, Fossum Law Office, LLC, Northfield, MN, for amicus curiae Minnesota Association of Criminal Defense Lawyers.

Considered and decided by LARKIN, Presiding Judge; SCHELLHAS, Judge; and JOHNSON, Judge.

## O P I N I O N

JOHNSON, Judge.

After Rice County petitioned to terminate S.L.J.'s parental rights to a newborn child, the district court appointed an attorney in private practice to represent her, at the county's expense. Two months later, the attorney submitted an invoice to the county, seeking payment of his attorney fees and reimbursement of his expenses. The county refused to pay the invoice. At the attorney's request, the district court issued a peremptory writ of mandamus requiring the county to pay the attorney fees and expenses and, in addition, requiring the county's board of commissioners to approve a system by which it would pay the fees and expenses of private attorneys in other child-protection cases.

We conclude that the district court did not err by ordering the county to pay the attorney fees and expenses incurred by the appointed attorney. But we conclude that the district court erred by ordering the county to approve a system to pay the fees and expenses of attorneys appointed in other cases. Thus, we affirm in part and reverse in part.

## FACTS

S.L.J. is a single woman who resides in Rice County. In early September 2008, she gave birth to a baby. Five days after the birth, the county removed the child from S.L.J.'s custody and filed a petition for the termination of S.L.J.'s parental rights. The county alleged that removal and termination were necessary because S.L.J.'s parental rights to another child had been terminated in another state two years earlier.

On September 22, 2008, the district court issued an order appointing Grant D. Sanders, an attorney in private practice, to represent S.L.J. The order states that "reasonable attorney's fees shall be paid to said attorney" and that "Rice County shall pay such reasonable attorney's fees." It appears from the record that the district court issued the order on an *ex parte* basis, without a request from S.L.J. The county did not object or otherwise respond to the order.

The district court's September 22, 2008, order was, upon its issuance, rife with potential for controversy in light of a pre-existing decision by the county that it would refuse to pay the fees of attorneys representing indigent parents in child-protection cases. The county's decision was prompted by a decision of the Minnesota Board of Public Defense to discontinue its general practice of representing indigent parents in child-protection cases. The board of public defense set forth its position in a resolution dated June 5, 2008, which states that assistant public defenders will "not accept any cases involving

non-mandated services after" July 8, 2008. In a letter sent to the chief justice on the same date, the chair of the board of public defense stated that "non-mandated services" include representation of parents in child-protection cases, including termination-of-parental-rights (TPR) cases. The board's resolution states that its new policy arises from budget constraints and staffing reductions as well as increasing caseloads.

Following the June 2008 announcement of the board of public defense, the Rice County Board of Commissioners considered the issue of responsibility for attorney fees incurred by court-appointed attorneys in child-protection cases. On July 22, 2008, the county board approved Resolution No. 08–046, which refers to the recent decision of the board of public defense, states that Minnesota statutes do "not clearly mandate counties to fund these services even if ordered by the local court to provide the service[s]," and states that the county "will not pay for these services in 2008 or future years."

The appellate record reflects that county officials and the district court had communications on this issue prior to the commencement of this case. On July 16, 2008, prior to the county board's adoption of Resolution No. 08–046, the court administrator of the Rice County District Court sent a letter to the county administrator requesting that the county allocate $180,000 of its 2009 budget to attorney fees for child-protection cases. (The court administrator estimated that 60 cases would be filed, that each case would require approximately 30 hours, and that attorneys would seek payment at a rate of $100 per hour.) After the county board passed Resolution No. 08–046, the county administrator wrote to the court administrator to inform the court that the requested funds "will not be included in the 2009 budget." The county administrator's let-

ter recognized that the district court is in "a difficult position" and concluded by stating, "It is an unfortunate situation that will hopefully be resolved in the next legislative session."

Consistent with the district court's September 22, 2008, order, Sanders submitted an invoice to the county on October 17, 2008, for services performed and expenses incurred up to that date. The invoice sought payment in the amount of $3,154.86 and requested payment within 30 days. When Sanders did not receive payment within that period, he contacted the court administrator, who directed him to the county attorney. On November 3, 2008, the county attorney informed Sanders that the county would not pay the invoice.

On November 25, 2008, Sanders informed the district court that the county had refused to pay his first invoice, noted that he had performed additional work since the first invoice, and requested an order requiring payment of $4,258.31. In December 2008, the district court issued an order requiring the county to pay Sanders's fees and expenses or to show cause why it should not be held in contempt for its failure to do so. The district court scheduled the show-cause hearing for January 5, 2009. At the hearing, the parties stipulated to the relevant facts and presented arguments concerning whether the county is obligated to pay Sanders's fees and expenses. For reasons that are not apparent in the appellate record due to the absence of a transcript, the parties stipulated to converting the contempt proceeding to a proceeding on a petition for a writ of mandamus. The order to show cause was deemed an alternative writ of mandamus, and the hearing was deemed a hearing on a petition for a peremptory writ of mandamus. *See* Minn.Stat. § 586.03 (2008). Three days after the hearing, the county voluntarily dismissed the TPR peti-

tion because S.L.J. had substantially complied with the agreed-upon reunification plan and, in its stead, filed a petition alleging that the child is in need of protection or services. *See* Minn.Stat. §§ 260C.007, subd. 6, .141, subd. 1 (2008).

On January 9, 2009, the district court issued a peremptory writ of mandamus. The writ orders the county to pay Sanders $4,000 for services provided to S.L.J. through November 20, 2008. The district court also declared that the county would be required to pay additional compensation to Sanders for services provided to S.L.J. after November 20, 2008, to the extent that additional amounts are approved by the district court. In addition, the district court ordered the county to "approve a system for payment of costs for representing indigent parents in future child-protection cases during the budget year 2009, by no later than February 16, 2009."

The county appeals from the writ. After the county filed its notice of appeal, the district court denied the county's motion to stay the writ with respect to the $4,000 payment but granted the county's motion to stay in all other respects.

## ISSUES

I.  Did the district court err by ordering the county to pay the attorney fees and expenses incurred by Sanders on behalf of S.L.J.?

II.  Did the district court err by ordering the county to approve a system for the payment of fees and expenses incurred by attorneys appointed in other child-protection cases?

III.  Is Sanders entitled to damages or costs and disbursements?

## ANALYSIS

The county raises two issues on appeal. First, the county argues that the district court erred by ordering the county to pay Sanders's attorney fees and expenses. Second, the county argues that the district court erred by ordering the county to approve a system for the payment of attorney fees in other child-protection cases. In his responsive brief, Sanders[1] argues that the district court did not err by ordering the county to pay his attorney fees but takes no position on the issue whether the county should be required to approve a system for the payment of attorney fees in other child-protection cases.[2]

## I.

■  The county first argues that the district court erred by issuing a peremptory writ of mandamus requiring the county to pay the attorney fees and expenses Sanders incurred in representing S.L.J. This court applies a *de novo* standard of review to a district court's issuance of a

1.  Although S.L.J. was the respondent in the district court and is nominally the respondent on appeal, Sanders is the real party in interest. The district court deemed Sanders to be the petitioner for purposes of the writ of mandamus, and the writ directs the county to make payment directly to Sanders.

2.  Sanders suggests that this case is moot because the TPR petition has been dismissed, but he proceeds to argue that we should consider the merits of the case pursuant to an exception to the mootness doctrine. The county has not addressed the issue. We are satisfied that the issues presented in the ap-

peal are justiciable. Although the underlying TPR petition has been dismissed, the parties continue to dispute Sanders's entitlement to attorney fees and expenses. That the county has made the payment does not moot the appeal because a ruling in the county's favor could result in a refund of the amounts paid. In addition, the county is challenging the requirement that the county pay attorney fees and expenses incurred by Sanders after November 22, 2008, and the requirement that the county "approve a system for payment of costs for representing indigent parents in future juvenile protection cases."

writ of mandamus if the writ is based solely on a question of law. *Breza v. City of Minnetrista,* 725 N.W.2d 106, 110 (Minn.2006).

■ The two primary purposes of mandamus are, first, to compel the performance of an official duty clearly imposed by law or, second, to compel the exercise of discretion when the exercise of discretion is required by law. *See* Minn.Stat. § 586.01 (2008); *Northern States Power Co. v. Metropolitan Council,* 684 N.W.2d 485, 491 (Minn.2004). The writ in this case is directed to the first purpose. To be entitled to a writ of mandamus compelling the performance of an official duty, a petitioner must show that (1) the county "failed to perform an official duty clearly imposed by law"; (2) he "suffered a public wrong and was specifically injured" by the county's failure; and (3) he has "no other adequate legal remedy." *Breza,* 725 N.W.2d at 109–10 (quotations omitted).

■ With respect to Sanders's fees and expenses, the county does not challenge the second or third requirements of a writ of mandamus. Rather, the county challenges only the first requirement, that the county failed to perform an official duty clearly imposed by law. The first requirement will be satisfied "only when the petitioner has shown the existence of a legal right to the act demanded which is so clear and complete as not to admit any reasonable controversy." *Day v. Wright County,* 391 N.W.2d 32, 34 (Minn.App. 1986), *review denied* (Minn. Sept. 24, 1986). "Mandamus will lie to compel a governmental body or board to perform a duty which the law clearly and positively requires." *International Union of Operating Eng'rs, Local No. 49 v. City of Minneapolis,* 305 Minn. 364, 374, 233 N.W.2d 748, 754 (1975).

The county's argument concerning the first requirement of a writ of mandamus has three parts. First, the county argues that it has no obligation to pay Sanders's fees because the district court had no authority to appoint him. Second, the county argues that, even if Sanders's appointment is valid, there is no statutory authority for imposing financial responsibility for Sanders's fees on the county. And third, the county argues that, even if its first two arguments do not prevail, it has the discretion to decline to pay Sanders's fees, notwithstanding a court order. We will address each of these arguments in turn.

## A. Validity of Sanders's Appointment

■ As stated above, the county first argues that Sanders is not entitled to attorney fees because his appointment is invalid. According to the county, the district court had no authority to appoint Sanders to represent S.L.J. because the district court was required to appoint a public defender at the expense of the board of public defense. In response, Sanders argues that the district court had the discretion to appoint private counsel at the county's expense. We note that the board of public defense is not a party to this case and has not sought leave to express its views in an *amicus curiae* brief.

As noted above, the county did not challenge the September 22, 2008, order at the time it was issued. Not until three months later, when Sanders sought to enforce the order, did the county formally object to the September 22, 2008, order. The question arises whether the county has sufficiently preserved its challenge to the September 22, 2008, order. Sanders has not argued that the county forfeited the argument. We are not aware of any authority requiring the county to challenge such an order at the time it is issued or any authority holding that the lack of such a challenge amounts to forfeiture. Thus, we will proceed to consider the merits of the county's first argument.

We begin by noting what is undisputed, that S.L.J. had a right to counsel in this case arising from multiple sources of law. A state statute provides generally that a parent has a "right to effective assistance of counsel in connection with a proceeding in juvenile court." Minn.Stat. § 260C.163, subd. 3(a) (2008). More specifically, in a TPR proceeding, "if the ... parent ... desires counsel but is unable to employ it, the court shall appoint counsel to represent the ... parents ... in any case in which it feels that such an appointment is appropriate." *Id.*, subd. 3(b) (2008).

In addition, S.L.J. had an absolute right to counsel under federal law because, as the TPR petition notes, she is eligible for membership in the Wyandotte Nation, an Indian tribe. The federal Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901–1963 (2006), requires that "the parent or Indian custodian shall have the right to court-appointed counsel in any removal, placement, or termination proceeding" involving an Indian child. 25 U.S.C. § 1912(b); *see also* Minn.Stat. § 260C.001, subd. 3 (2008) (noting that the ICWA applies to proceedings involving an Indian child). This requirement of the ICWA is embodied in the Minnesota Rules of Juvenile Protection Procedure, which state, "In any juvenile protection matter involving an Indian child, if the child's parent or Indian custodian is unable to afford it, the court shall appoint counsel to represent the parent or Indian custodian." Minn. R. Juv. Prot. P. 25.02, subd. 2(c). A failure to appoint counsel for an indigent Indian parent is a violation of the ICWA and may result in the invalidation of the entire TPR proceeding. 25 U.S.C. § 1914.

In certain circumstances, a district court may be required to appoint a public defender, depending on the application of three provisions in chapter 611 of the Minnesota Statutes. The first of those three provisions describes the categories of persons who are entitled to representation by a public defender:

The following persons who are financially unable to obtain counsel are entitled to be represented by a public defender:

(1) a person charged with a felony, gross misdemeanor, or misdemeanor including a person charged under sections 629.01 to 629.29;

(2) a person appealing from a conviction of a felony or gross misdemeanor, or a person convicted of a felony or gross misdemeanor, who is pursuing a postconviction proceeding and who has not already had a direct appeal of the conviction;

(3) a person who is entitled to be represented by counsel under section 609.14, subdivision 2; or

(4) a minor ten years of age or older who is entitled to be represented by counsel under section 260B.163, subdivision 4, or 260C.163, subdivision 3.

Minn.Stat. § 611.14 (2008).

The second provision of chapter 611 relevant to the county's argument provides a mechanism for persons entitled to representation by a public defender to effectuate that right. The statute provides, "Any person described in section 611.14 or any other person entitled by law to representation by counsel, may at any time request the court in which the matter is pending, or the court in which the conviction occurred, to appoint a public defender to represent the person." Minn.Stat. § 611.16 (2008).

The third relevant provision of chapter 611 provides for court appointment of a public defender for those persons who are entitled to a public defender: "If it appears to a court that a person requesting the appointment of counsel satisfies the requirements of this chapter, the court

*shall* order the appropriate public defender to represent the person at all further stages of the proceeding through appeal, if any." Minn.Stat. § 611.18 (2008) (emphasis added).

The county's argument—that the district court had no authority to appoint Sanders because it was required to appoint a public defender—hinges on the third provision, section 611.18. That part of the statute uses mandatory language in stating that, if certain conditions are met, "the court *shall* order the appropriate public defender to represent the person" requesting appointment of a public defender. *Id.* (emphasis added); *see also State v. Clark,* 755 N.W.2d 241, 250 (Minn.2008) (noting that, for purposes of statutory interpretation, "shall" is mandatory). The district court is required to appoint a public defender if the person requesting an appointment "satisfies the requirements of this chapter." Minn.Stat. § 611.18. The phrase "satisfies the requirements of this chapter" refers to section 611.16, which describes two categories of persons who may request the appointment of a public defender: "[a]ny person described in section 611.14 or any other person entitled by law to representation by counsel." Minn.Stat. § 611.16. Thus, the question becomes whether S.L.J. was within either the first category, persons who are "described in section 611.14," or the second category, "any other person entitled by law to representation by counsel." *Id.*

S.L.J. was not within section 611.16's first category because she is not "described in section 611.14." *Id.* The first and second paragraphs of section 611.14 plainly do not apply to this case because S.L.J. was not charged with or convicted of a criminal offense. The third paragraph of section 611.14 also does not apply to this case because S.L.J. was not accused of violating the conditions of probation or a stayed sentence. And the fourth paragraph of section 611.14 also does not apply because S.L.J. is not a minor. Thus, S.L.J. is not a "person described in section 611.14." *Id.*

Whether S.L.J. was within section 611.16's second category—*i.e.,* whether she is an "other person entitled by law to representation by counsel"—is not quite as clear. *Id.* The legislature has not provided any guidance concerning how a person may be entitled to a public defender by means other than section 611.14, and there is no caselaw interpreting the second prong of section 611.16. Because section 611.16 is found in chapter 611, which concerns the rights of persons accused in criminal cases, it is reasonable to believe that the legislature intended section 611.16 to refer only to persons who are parties to criminal cases. Such an intent is reflected in the legislative history. Section 611.16 was enacted in 1965, along with several other provisions between sections 611.14 and 611.27. *See* 1965 Minn. Laws ch. 869, §§ 1–20, at 1631–39. The legislature's purpose in enacting those provisions was to comply with the then-recent opinion of the United States Supreme Court in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), in which the Court held that the states are required by the Sixth Amendment to provide an attorney for each person charged with a crime who is unable to afford an attorney, *id.* at 344, 83 S.Ct. at 796. *See Dziubak v. Mott,* 503 N.W.2d 771, 773 (Minn.1993); *see also* Hearing on H.F. No. 640 Before the House Appropriations Comm. (May 19, 1965) (statement of Rep. Hall). At the time of its enactment, section 611.14 applied only to persons charged with or convicted of criminal offenses (specifically, persons charged with felonies and gross misdemeanors, persons appealing a conviction of a felony or gross misdemeanor or pursuing postconviction relief after such a conviction, persons subject to revocation of a

stayed sentence, and persons for whom an extended sentence as a dangerous offender was being sought). Minn.Stat. § 611.14 (1965). The legislature did not make any provision for public defenders to provide representation in juvenile cases until 1969. *See* 1969 Minn. Laws ch. 655, § 1, at 1125. Even in 1969, however, the statutorily required role of public defenders in juvenile-delinquency and child-protection cases did not extend to the representation of adults but, rather, was limited to the representation of minors. *See* Minn.Stat. § 611.14(d) (1969). That statutory provision has not been expanded since 1969. *See* Minn.Stat. § 611.14(4) (2008); *see also* 2000 Minn. Laws ch. 357, § 2, at 378 (limiting representation of minors to those "ten years of age or older").

Thus, it is apparent that, when section 611.16 was enacted in 1965, the legislature intended chapter 611 to apply only to persons who are parties to criminal cases. At that time, the legislature could not have intended the phrase "other person entitled by law to representation by counsel" in section 611.16 to encompass a parent involved in a child-protection case. Minn. Stat. § 611.16. Accordingly, a district court is not required by chapter 611 to appoint a public defender to represent a parent who is a party to a TPR case.[3]

Even if we were persuaded by the county's argument that the text of chapter 611 requires a district court to appoint a public defender to represent a parent in a

TPR case, we nonetheless would not conclude that the district court in this case erred by appointing Sanders to represent S.L.J. The interpretation of chapter 611 urged by the county would, at best, lead to a conclusion that a district court has discretion to appoint either a public defender or a private attorney to represent a parent in a TPR case. In *Morris v. State*, 765 N.W.2d 78 (Minn.2009), the supreme court recognized that a person convicted of a misdemeanor has a right under article I, section 6, of the Minnesota Constitution to the assistance of counsel in a postconviction proceeding if the conviction has not previously received appellate review. *Id.* at 83. But despite recognizing that constitutional right to counsel, the *Morris* court refrained from holding that the district court erred by declining to appoint a public defender for Morris, who did not fall within any of the four paragraphs of section 611.14. *Id.* at 84. Rather, the supreme court left to "the district court's discretion the question of who should be appointed as counsel" in that situation. *Id.* at 85. The supreme court pointed out that "the legislature has not articulated a policy judgment regarding how the right to misdemeanor appellate counsel should be vindicated." *Id.* The same rationale would apply to this case. Even if S.L.J. had been entitled by the text of chapter 611 to the appointment of a public defender, the district court would have had the discretion to appoint either a public de-

---

**3.** In light of this conclusion, we need not answer the question whether a district court may appoint a public defender, over his or her objection, to represent a person with a right to counsel but not an entitlement under chapter 611 to representation by a public defender. *Cf. In re Office of Dist. Pub. Defender for the First Judicial Dist.*, 373 N.W.2d 772, 775–76 n. 1 (Minn.1985) (holding that district court did not have inherent judicial power to withdraw from statewide public defender system and adopt separate system);

*State v. Dahlgren*, 259 Minn. 307, 313, 107 N.W.2d 299, 303 (1961) (noting that "the courts may have inherent power to appoint counsel to represent an indigent person on appeal" from a criminal conviction); *see also Mallard v. United States Dist. Court for the Southern Dist. of Iowa*, 490 U.S. 296, 301–02, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) (interpreting 28 U.S.C. § 1915(d) to not permit federal district court to compel attorney to represent civil litigant).

fender or a private attorney to represent her. Because we interpret the text of chapter 611 to not require the appointment of a public defender, however, *Morris* does not apply.

We conclude that, because S.L.J. is not within either the first category or second category of persons described by section 611.16 and, thus, did not "satisf[y] the requirements of" chapter 611, Minn.Stat. § 611.18, the district court did not err by appointing Sanders to represent her.

## B. Section 260C.331, Subdivision 3

■ The county next argues that, even if Sanders's appointment is valid, there is no statutory basis for imposing responsibility for Sanders's fees on the county. The district court based its ruling on a statute that provides:

The following expenses are a charge upon the county in which proceedings are held upon certification of the judge of juvenile court or upon such other authorization provided by law:

(1) the fees and mileage of witnesses, and the expenses and mileage of officers serving notices and subpoenas ordered by the court, as prescribed by law;

(2) the expense of transporting a child to a place designated by a child-placing agency for the care of the child if the court transfers legal custody to a child-placing agency;

(3) the expense of transporting a minor to a place designated by the court;

(4) *reasonable compensation for an attorney appointed by the court to serve as counsel,* except in the Eighth Judicial District where the state courts shall pay for counsel to a guardian ad litem until the recommendations of the task force created in Laws 1999, chapter 216, article 7, section 42, are implemented.

The state courts shall pay for guardian ad litem expenses.

Minn.Stat. § 260C.331, subd. 3 (emphasis added). The district court relied on the highlighted portion of subdivision 3(4). We apply a *de novo* standard of review to a district court's interpretation of a statute and application of the statute to undisputed facts. *Becker v. Mayo Found.,* 737 N.W.2d 200, 207 (Minn.2007); *In re Welfare of Child of T.T.B. & G.W.,* 724 N.W.2d 300, 307 (Minn.2006).

■ The county contends that subdivision 3(4) does not apply to an attorney appointed to serve as counsel for a parent but, rather, applies only to an attorney appointed to serve as counsel for a guardian ad litem. But the plain language of subdivision 3(4) is not limited to counsel for a guardian ad litem. Rather, subdivision 3(4) provides that a county is responsible for the reasonable compensation of any attorney appointed by the court to serve as counsel in a TPR proceeding, regardless of the party whom the attorney represents. When "the language of a statute is plain, that meaning is applied as a manifestation of legislative intent." *Glacial Plains Coop. v. Hughes,* 705 N.W.2d 195, 197 (Minn.App.2005).

The county contends that other language in subdivision 3(4) demonstrates that the statute has a broader meaning. The county points out that the second phrase of the same paragraph makes an exception in one judicial district for the fees incurred by "counsel to a guardian ad litem." Minn.Stat. § 260C.331, subd. 3(4). The county contends that the more specific description in the second phrase suggests that the first phrase also is concerned with counsel for a guardian ad litem. We disagree. The legislature demonstrated its ability to describe categories of attorneys with specificity. The legislature limited the second phrase in two respects: first, based on the type of person represented and, second, based on the judicial district.

But the legislature used a more general description in the first phrase of subdivision 3(4) by saying simply, "an attorney appointed by the court to serve as counsel." *Id.* That the legislature chose not to use specific language to limit the first phrase indicates that the legislature intended a different, broader meaning. *See Harrison ex rel. Harrison v. Harrison,* 733 N.W.2d 451, 455 (Minn.2007) (reasoning that legislature's use of different terms indicates intent to assign different meanings). If we were to adopt the county's reasoning, the language limiting the second phrase to attorneys representing a guardian ad litem would be surplus language. "[W]e cannot add terms that the legislature has omitted." *Reider v. Anoka–Hennepin Sch. Dist. No. 11,* 728 N.W.2d 246, 250 (Minn.2007).

Thus, the phrase "an attorney appointed to serve as counsel," as used in subdivision 3(4) of section 260C.331, includes Sanders, who was appointed to represent S.L.J., a parent who was a party to a TPR case.[4]

**C. Section 375.1691**

■ The county also argues that, even if Sanders's appointment is valid, and even if the county is obligated by section 260C.331, subdivision 3(4), to pay Sanders

his reasonable compensation, the county nevertheless is exempt from financial responsibility for Sanders's fees and expenses pursuant to a statute that provides:

Notwithstanding any law to the contrary, a judicial order compelling payment out of county funds shall not be paid unless approved by the county board, if a budget request for the item was not submitted to the county board prior to adoption of the budget in effect for the fiscal year. If the county board refuses to approve payment, the order may be paid in the first fiscal year for which a budget is approved after receipt of the order. This section does not apply to a judgment or other award against the county that is a result of litigation to which the county or a county official in an official capacity was a party.

Minn.Stat. § 375.1691 (2008). The district court interpreted section 375.1691 to provide that a county may, if certain conditions exist, deny approval of a court-ordered payment in the current fiscal year but must pay the debt in the following year, regardless whether the county board has budgeted for the expense. The county contends, however, that it may decline to

---

4. Because the phrase "an attorney appointed to serve as counsel" in section 260C.331, subdivision 3(4), is unambiguous, it is unnecessary to look to extrinsic sources of interpretation, such as the legislative history of the statute. *See Breza,* 725 N.W.2d at 114 n. 13. Nonetheless, we note that we are unaware of any indication of legislative intent in the legislative history that is contrary to our conclusion. Section 260C.331, subdivision 3(4), took its current form in 1999. *See* 1999 Minn. Laws ch. 216 art. 7, § 22, at 1362. The relevant language of the session law previously was introduced as part of S.F. No. 2221, which was concerned generally with the transition from county funding of the district courts to state funding. Hearing on S.F. No. 1308 Before the Senate Governmental Operations & Veterans Comm. (Mar. 24, 1999)

(statement of Sen. Ten Eyck); Hearing on S.F. No. 1308 Before the Senate Judiciary Comm. (Mar. 29, 1999) (statement of Sen. Ten Eyck). After reviewing the hearings on that bill, we are unable to identify any statement by a legislator concerning the issue of responsibility for fees incurred by attorneys representing parents in child-protection cases. To the extent that we may have misperceived the legislature's intent, we note that the legislature meets annually and may express its intent anew. If the legislature declines to make any further laws on the subject, it is presumed to have done so with full knowledge of existing caselaw. *See Goodyear Tire & Rubber Co. v. Dynamic Air, Inc.,* 702 N.W.2d 237, 244 (Minn.2005); *State v. Fleming,* 724 N.W.2d 537, 540 (Minn.App.2006).

pay Sanders's attorney fees because the county never has provided for such a payment in its annual budgets.

The county's argument is well-grounded to the extent it concerns an obligation to make payment to Sanders in 2008. A county is not obligated to make payment within a given year "if a budget request for the item was not submitted to the county board prior to adoption of the budget in effect for the fiscal year." *Id.* In this case, it appears that Rice County's fiscal year ends on December 31. There is no evidence in the record indicating that the district court, Sanders, or any other person submitted a budget request to the county prior to the county's adoption of its 2008 budget. But the record reflects that the district court submitted a budget request to the county board in a timely manner for the county's 2009 budgeting cycle. Thus, the county cannot rely on section 375.1691 to avoid an obligation to make payment to Sanders in 2009. Accordingly, the district court did not err in its January 9, 2009, order, in which it rejected the county's argument that section 375.1691 exempts the county from the district court's order requiring it to make payment to Sanders.

In sum, the district court did not err by issuing a writ of mandamus ordering the county to pay Sanders $4,000 as reasonable compensation for the services he provided to S.L.J. through November 20, 2008, and ordering the county to pay reasonable compensation to Sanders, as determined by the district court, for services Sanders provided to S.L.J. after that date.

## II.

The county next argues that the district court erred by issuing a peremptory writ of mandamus requiring the county to "approve a system for payment of costs for representing indigent parents in future juvenile cases during the budget year 2009, by no later than February 16, 2009."

Sanders takes no position on this part of the county's appeal.

As stated above, the writ of mandamus issued by the district court is proper if (1) the county "failed to perform an official duty clearly imposed by law"; (2) a petitioner "suffered a public wrong and was specifically injured" by the county's failure; and (3) a petitioner has "no other adequate legal remedy." *Breza,* 725 N.W.2d at 109–10 (quotations omitted). We apply a *de novo* standard of review. *Id.* at 110.

With respect to the first requirement, whether the county failed to perform an official duty clearly imposed by law, the caselaw provides that a district court may issue a writ of mandamus "only when the petitioner has shown the existence of a legal right to the act demanded which is so clear and complete as not to admit any reasonable controversy." *Day,* 391 N.W.2d at 34. "[M]andamus will lie only to compel performance of a duty which the law clearly and positively requires." *Id.* Although we have concluded that the county has a clear legal duty to pay Sanders's attorney fees, the county has no legal duty to approve a system for the payment of the attorney fees and expenses of attorneys who represent other parents in other child-protection cases. The district court did not identify the source of such a duty. We can foresee that parents in other cases will require counsel, but the county's obligation to pay attorney fees and expenses in such a case does not arise until an appointed attorney requests payment. More importantly, the county simply does not have a clear legal duty to take the proactive step of preparing and approving a system by which it may fulfill future obligations to pay attorney fees and expenses. The county may determine the means by which it will satisfy its future obligations as those obligations become

due. Thus, the first requirement of a writ of mandamus is not satisfied.

With respect to the second requirement, it is conceivable that Sanders or another private attorney might suffer a specific injury due to the absence of a system for the payment of fees and expenses of appointed attorneys, such as difficulty collecting payment from the county. It is unclear whether such difficulty would constitute an injury sufficient to support a writ of mandamus. The district court did not identify any such injury. *See Breza,* 725 N.W.2d at 109–10. Thus, it is questionable whether the second requirement of a writ of mandamus is satisfied.

With respect to the third requirement, Sanders or another private attorney must have no other "plain, speedy, and adequate remedy in the ordinary course of law." Minn.Stat. § 586.02. The district court did not explain how appointed attorneys would not have an adequate legal remedy if and when the county becomes obligated to pay attorney fees and expenses in other child-protection cases. Presumably, if this situation were to arise again in another case, the district court could order payment and, if necessary, issue another writ of mandamus. Thus, the third requirement of a writ of mandamus is not satisfied.

In sum, the district court erred by issuing a writ of mandamus ordering the county to approve a system for payment of reasonable compensation to appointed attorneys representing indigent parents in other child-protection cases.

### III.

■ In his respondent's brief, Sanders seeks damages and costs and disbursements based on various provisions of law. The county did not file a reply brief and, thus, has not responded to Sanders's arguments.

First, Sanders argues that he is entitled to damages and costs on the ground that the county's appeal is frivolous. He relies on a rule of court that states, "If an appeal delays proceedings on a judgment of the trial court and appears to have been taken merely for delay, the appellate court may award just damages and single or double costs to the respondent." Minn. R. Civ. App. P. 138. We disagree with Sanders's premise; the county's appeal is not frivolous, and we do not perceive that the appeal was "taken merely for delay." *Id.* The county's appeal "raised significant issues." *See Bisbee v. City of Fairmont,* 593 N.W.2d 714, 719 (Minn.App.1999) (denying request under rule 138). The county made reasonable arguments concerning the relevant statutory provisions, and there is no indication that its positions were not put forth in earnest. Thus, Sanders is not entitled to damages or costs under rule 138. *See Bekis v. Schilling,* 357 N.W.2d 362, 365 (Minn.App.1984) (denying damages under rule 138 where appeal was not frivolous or taken for delay).

■ Second, Sanders argues that he is entitled to damages due to the issuance of the writ of mandamus. He relies on a statute that provides: "A plaintiff who is given judgment, shall recover the damage sustained, together with costs and disbursements, and a peremptory mandamus shall be awarded without delay." Minn. Stat. § 586.09 (2008). A person who wishes to recover damages in connection with the issuance of a writ of mandamus must plead a request for that type of relief in the manner required by rule 8.01 of the Minnesota Rules of Civil Procedure. *City of Waite Park v. Minnesota Office of Admin. Hearings,* 758 N.W.2d 347, 352 (Minn.App.2008), *review denied* (Minn. Feb. 25, 2009). But Sanders did not request damages in a pleading or other document addressed to the district court.

Thus, the district court did not err by not awarding damages to Sanders.

Third, Sanders argues that the district court erred by denying him a recovery of costs and disbursements. *See* Minn.Stat. § 586.09. There is no indication in the district court record that the district court ever denied such a request. Although Sanders states that he filed a bill of costs and disbursements, and although the file includes an affidavit of service, we do not see the bill in the district court file, and there is no indication that the bill actually was filed. Thus, there is no action by the district court for this court to review. If Sanders indeed filed a bill of costs and disbursements that has been overlooked by the district court, we trust that the matter will be addressed in due course.

## D E C I S I O N

The district court did not err by ordering the county to make payment to Sanders for the attorney fees and expenses he incurred in representing S.L.J. in this case. The district court erred by ordering the county to approve a system for the payment of attorney fees and expenses in other child-protection cases. Sanders is not entitled to an award by this court of damages or costs and disbursements.

**Affirmed in part and reversed in part.**