JESSON, Judge
Appellant Greg Kellen challenges the district court's interpretation of a statutory provision enacted as part of a broader effort to address the farm crisis occurring in Minnesota during the mid-1980s. That law, Minnesota Statutes section 550.366, establishes that judgments for unpaid debts on agricultural property owed by farm debtors are subject to a three-year limitation on execution rather than the *770 standard ten-year limitation. We conclude that the three-year limitation in the statute does not apply to debts resulting from intentional torts. Accordingly, we affirm.
FACTS
Neighbors appellant Greg Kellen and respondent John Green had a falling out in 2012, resulting in ongoing litigation. Green sued Kellen for conversion of farm equipment, trespass in his corn field, and defamation for spreading rumors around their small, rural community that he was a thief. Green alleged that these rumors hurt his reputation among the farming community and caused him to lose land that he was leasing for his farming operation. Kellen conceded liability, and a trial was held on the issue of damages. The district court granted Green $2,000 for the conversion claim and $2,000 for the defamation claim. Green appealed, and this court remanded the case for a new determination of special damages resulting from the defamation claim. Green v. Kellen , No. A13-1554, 2014 WL 2178783 (Minn. App. May 27, 2014). Based on the record from the original trial, the district court awarded Green $86,840 in special damages for the defamation claim, bringing his total damages to $88,840. The effective date of the judgment remained the same, July 10, 2013. This court upheld the damages award on appeal. Green v. Kellen , No. A14-2074, 2015 WL 4508145 (Minn. App. July 27, 2015), review denied (Minn. Oct. 20, 2015).
Once Kellen's appeals were adjudicated, Green began efforts to collect his judgment from Kellen approximately one year later, in October 2016.[1] Green served Kellen with a garnishment summons and other collection documents, then several months later served him with discovery requests related to Kellen's farm assets.[2] Kellen's personal property included multiple vehicles and a significant amount of farm equipment, including tractors, manure spreaders, wagons, trailers, a plow, and other various farm implements.
In August 2017, a writ of execution[3] valid for 180 days was issued for the principal amount of $88,840. In January 2018, the sheriff executed the writ on Kellen's personal property, taking possession of a 1994 Chevrolet pickup truck, a 1972 Load Kin belly dump semi-trailer, and a 1981 homemade trailer. Kellen then filed and served a declaration of exempt property declaring that all of his property in the custody of the sheriff was exempt from execution under Minnesota Statutes section 550.37 (2016). Kellen also filed a motion seeking to prevent the sale of his property, in which he also argued that the three-year limitation on execution on agricultural property found in Minnesota Statutes section 550.366 barred Green from any further execution. The district court denied Kellen's motion to prevent the sale, and his property was sold. Kellen purchased his pickup truck and semi-trailer at the sale, and Green purchased the homemade *771 trailer. Subsequently, the district court held that Green's collection efforts were not time-barred by Minnesota Statutes section 550.366.[4] Kellen appeals.
ISSUE
Does the three-year limitation on execution on agricultural property contained in Minnesota Statutes section 550.366 apply to a judgment debt resulting from intentional torts committed by a farmer?
ANALYSIS
Kellen argues that Green's execution against his farm property violated Minnesota Statutes section 550.366 because the amended judgment was over three years old and thus unenforceable against his farm property. Kellen first argues that the plain language of Minnesota Statutes section 550.366 is unambiguous in its use of the term "debt," which he contends means any type of debt. And Kellen maintains that this reading is supported by the legislature's intent to provide broad protection to farm families. The district court found that Kellen's debt arose from the intentional torts of conversion and defamation, not from a default on a farm obligation or from an agricultural debt, and thus did not fall within the three-year limitation on execution found in the statute. Because the district court's application of the statute to undisputed facts involves a question of law, its decision is not binding on this court. Davies v. W. Publ'g Co. , 622 N.W.2d 836, 841 (Minn. App. 2001) (citing Lefto v. Hoggsbreath Enters., Inc. , 581 N.W.2d 855, 856 (Minn. 1998) ), review denied (Minn. May 29, 2001). Rather, statutory interpretation "is a question of law that we review de novo." Cocchiarella v. Driggs , 884 N.W.2d 621, 624 (Minn. 2016).
The purpose of statutory interpretation is to determine the legislature's intent. Minn. Stat. § 645.16 (2016). To do so, this court first looks to see whether the plain language of the statute is ambiguous. Am. Family Ins. Grp. v. Schroedl , 616 N.W.2d 273, 277 (Minn. 2000) (quotation and citation omitted). If the statute's meaning is clear and unambiguous, then we apply its plain language. Brua v. Minn. Joint Underwriting Ass'n , 778 N.W.2d 294, 300 (Minn. 2010). If the statute can reasonably be construed to have more than one meaning, it is ambiguous, and we look beyond the text to a list of factors and presumptions prescribed by the legislature. Minn. Stat. § 645.16.
We begin our analysis with the language of Minnesota Statutes section 550.366, entitled "Judgments on debts related to agricultural property," which states:
Subdivision 1. Definitions. For purposes of this section, the following terms have the meanings given:
(1) "Agricultural property" means personal property that is used in a farm operation.
(2) "Farm debtor" means a person who has incurred debt while in the operation of a family farm, a family farm corporation, or an authorized farm corporation as defined in section 500.24, subdivision 2.
Subd. 2. Limits on execution. A judgment for the unpaid balance of a debt on agricultural property owed by a farm debtor may not be executed upon real or personal property after three *772 years from the date the judgment was entered.
Subd. 3. Attachment to newly acquired property. A judgment for the unpaid balance of a debt on agricultural property owed by a farm debtor does not attach to real or personal property that is acquired by the farm debtor after the judgment is entered.
The relevant provision is subdivision two, which outlines the type of judgment debt to which the three-year limit on execution applies. It provides that the relevant judgment must be for "the unpaid balance of a debt on agricultural property owed by a farm debtor." Minn. Stat. § 550.366, subd. 2. Kellen argues that we should construe the word debt broadly to encompass any and all debt, including judgment debt resulting from intentional torts.
Although the reference to "a debt" could be interpreted broadly to mean any type of debt if read in isolation, the other provisions of the statute serve as restrictions on the type of judgment debt that the statute covers. See Schroedl , 616 N.W.2d at 277-78 (noting that courts read and construe a statute as a whole and interpret specific statutory provisions considering surrounding sections). The first limiting phrase states that the debt must be "on agricultural property," and the second limiting phrase states that the debt must be "owed by a farm debtor," a "person who has incurred debt while in the operation of a family farm." Minn. Stat. § 550.366, subds. 1(2), 2. Thus, the plain language of the statute requires three elements before the three-year limitation applies to execution: (1) a judgment for the unpaid balance of a debt, (2) the debt was on agricultural property, and (3) the debt was incurred while in the operation of a family farm.
We next apply these statutory requirements to Kellen's debt. Although Kellen satisfies the first element-Green seeks to execute on a judgment for the unpaid balance of a debt-Kellen does not meet the second or third statutory requirements. Kellen's judgment debt was not a debt owed on his agricultural property. The statute does not say that the three-year limitation on execution applies to a judgment "executed on" agricultural property; it states that it applies to the unpaid balance of a debt on agricultural property. Minn. Stat. § 550.366, subd. 2 (emphasis added). Further, the debt underlying the judgment executed by Green was not incurred while in the operation of Kellen's family farm. Kellen is a farmer who owes a debt, but Green's judgment arose from intentional torts of defamation and conversion committed by Kellen. Accordingly, although Kellen does owe a judgment for the unpaid balance of a debt to Green, Kellen's debt was neither on agricultural property nor incurred while in the operation of a family farm. Therefore, Green's judgment does not qualify for the three-year limitation on execution on agricultural property found in section 550.366.
In sum, while the legislature directed in Minnesota Statutes section 550.366 that a judgment for an unpaid debt "on agricultural property owed by a farm debtor" may not be executed upon after three years, the plain language of the statute does not encompass all judgment debts. It applies only to judgment debts that meet three designated conditions. Kellen's debt, arising from intentional torts, does not.
Even if we agreed that the use of the word "debt" could reasonably be read to mean any and all debts, we would be faced with two reasonable interpretations, requiring us to turn to the factors presented in Minnesota Statutes section 645.16. The legislature outlined a list of factors to assist us in discerning legislative intent. Two are critical here: the occasion and necessity for enacting the law and the consequences *773 of a particular interpretation. Minn. Stat. § 645.16(1), (6).
First, we consider the problem the legislature sought to fix with this legislation. In the mid-1980s, the national agricultural depression had a particularly serious impact in Minnesota, leading to a farm crisis. See Hubert H. Humphrey III & Catharine F. Haukedahl, An Attorney General's Role in the Farm Crisis: The Minnesota Experience , 15 N.Y.U. Rev. L. & Soc. Change 295, 295 (1986). Minnesota led the nation in the number of farms lost in the year ending June 1, 1985, and in 1986 the value of farmland declined for the fifth consecutive year. Id. The declining agricultural economy had a "ripple effect" on the rural economy as a whole, and it was estimated that for every farm that failed, three local jobs were lost. Id. at 296. The debt burden that Minnesota farmers were facing was identified as potentially the "single most important problem facing financially distressed farmers." Id.
To address these issues, the legislature passed significant legislation in 1986 aimed at assisting farmers with their debt burden and improving rural financing, including the Farmer-Lender Mediation Act requiring mediation for some indebted farmers. See 1986 Minn. Laws ch. 398, art.1, §§ 6, at 405; 11, at 407. In legislative findings included in the Farmer-Lender Mediation Act-one portion of a broad program of farm relief-the legislature specifically noted that the agricultural sector of the state was under severe stress, which negatively impacted economic conditions in rural communities. Minn. Stat. § 583.21 (1986). Further, the legislature incorporated findings that farmers were struggling with mortgages and interest payments, which threatened their ability to keep their farmland and equipment. Id. The statute refers to farmers being:
unable to meet current payments of interest and principal payments on mortgages and other loan and land contracts and ... threatened with the loss of their farmland, equipment, crops, and livestock through mortgage and lien foreclosures, cancellation of contracts for deeds, and other collection actions.
Id.[5]
When we consider the purpose of the law, we discern that the legislature intended to provide farmers with protection during the debt collection process for debts related to ordinary farm operations. Nothing in this history indicates that the legislature intended to provide farmers with relief from judgments for intentional torts.[6]
Second, when determining legislative intent, this court may consider the "consequences of a particular interpretation." Minn. Stat. § 645.16(6). The practical *774 consequences of construing this statute to limit collection of judgments resulting from intentional torts to three years would limit the time that tort victims have to recover judgments. In some cases, the three-year restriction could prevent recovery altogether.[7] Intentional torts not only include conversion and defamation, but other serious actions, including assault. We do not discern that the legislature intended to provide farmers with the means to avoid or delay responsibility for their own intentional wrongful actions, which would be the practical consequence of Kellen's interpretation.
While the legislature did intend for this statute to aid farmers and farm families, it did so by providing them with additional protections for debt incurred in the context of their farming operations. That is evident from the plain language of Minnesota Statutes section 550.366. And it is consistent with the historical context and intended purpose of this statute. As a result, we conclude the three-year limitation on execution contained in Minnesota Statutes section 550.366 does not apply to judgment debt arising from intentional torts.
DECISION
The judgment debt arising from intentional torts of conversion and defamation is not entitled to the three-year limitation on execution found in Minnesota Statutes section 550.366. The plain language of the statute establishes a three-year execution limit only on a judgment for an unpaid balance of a debt that is both on agricultural property and incurred while in the operation of a family farm. Neither of these requirements is satisfied here. Even if the statute were ambiguous, nothing in the legislative history establishes an intent to apply the three-year limitation on execution to judgment debts arising from intentional torts. Because both the unambiguous plain language of Minnesota Statutes section 550.366 and legislative intent demonstrate that judgment debt resulting from intentional torts is not covered by the statute, the district court did not err in determining that it did not apply to the debt resulting from intentional torts committed by Kellen.
Affirmed.

Typically, a party has ten years to enforce a judgment. Minn. Stat. § 550.01 (2016). The challenged statute here limits the time period for execution to three years if the judgment is for "the unpaid balance of a debt on agricultural property owed by a farm debtor." Minn. Stat. § 550.366, subd. 2.

Green failed to comply with the Farmer-Lender Mediation Act, Minnesota Statutes section 583.26, subdivision 1 (2016) before pursuing enforcement of the judgment. Kellen moved for the district court to enforce the act, and the district court, finding that Kellen was a debtor under the Farmer-Lender Mediation Act, stayed collection pending mediation. No agreement was reached in mediation.

A writ of execution is an order from a court directing an officer to enforce a judgment, typically by seizing and selling property. Black's Law Dictionary 689 (10th ed. 2014) (defining execution).

The district court also held that Kellen's seized property was exempt under Minnesota Statutes section 550.37 and ordered Green to return the amount Kellen paid for his property at auction and the trailer Green purchased (or the purchase price if no longer in Green's possession) to Kellen. This issue is not raised on appeal.

While these legislative findings are specifically related to the Farmer-Lender Mediation Act, they are indicative of the legislature's intent with respect to the farm relief generally. Although the challenged statutory provision in this case was added one year later in 1987 to provide protection to farmers' personal property in addition to their real property, this statement of legislative findings is illustrative of the legislature's intent. See 1987 Minn. Laws ch. 292 § 1, at 1705-06.

Our interpretation that the statute does not cover judgment debts from intentional torts is consistent with Minnesota caselaw. In Westchester Fire Ins. Co. v. Hasbargen , this court concluded that the purpose of Minnesota Statutes section 550.366 was largely to alleviate the problem of farm foreclosures and sales. 632 N.W.2d 754, 756-57 (Minn. App. 2001). Later, this court determined that Minnesota Statutes section 550.366 was "intended to encourage Minnesotans to pursue farming as a profession, despite the financial risks involved." Glacial Plains Co-op. v. Hughes , 705 N.W.2d 195, 198 (Minn. App. 2005).

For example, after Kellen's appeals and petition for further review to the Minnesota Supreme Court were adjudicated, over two years had elapsed since the entry of judgment. Interpreting the three-year limitation to apply in this case would have left Green with roughly nine months to collect his judgment from Kellen.